State v. Wilson.

## THE STATE v. WILSON, Appellant.

### In Banc, March 4, 1903.

1. **Indictment: USE OF WORD "WITH."** The use of the word "with" before the words "pistol" or "gun," in charging a homicide by shooting another, is not only entirely unnecessary but would mar the strength of the allegation. The form to use in describing an assault or homicide by shooting is to allege that the offender "a certain pistol then and there charged with gunpowder and a leaden ball . . . did discharge and shoot off at, against and upon the body of his victim; and the said defendant *with* the said bullet aforesaid, out of the pistol aforesaid . . . did strike, penetrate and wound,"etc. (Again disapproving State v. Prendible, 165 Mo. 329, in so far as it holds that the word "with" is necessary in an indictment charging an assault or homicide by shooting).

2. **Confession: OBTAINED THROUGH ARTIFICE.** The competency of a confession by defendant admitting his guilt is not affected by the fact that it was obtained through the artifice of leading him to believe that his companion in the crime had already confessed.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Louis C. Jones* and *Henry B. Davis* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1)    This case was submitted to Division Two at the April term.   The indictment was found defective by that division according to the opinion written by SHERWOOD, J.   The charge as laid is nothing more than a copy of an indictment very generally used in this State, and is in full conformity with the common law on the subject.   A motion for rehearing was filed by the State, and the cause was thereupon transferred to Court in Banc.   The indictment was found defective for the reason that it failed to employ the word "with" in connecting the assault and the instrument used in the commission of the homicide.   It will be noticed that the instrument used was a revolver, or what belongs to a class of deadly weapons known as firearms.   In the case of State v. Furgerson, 152 Mo. 92, upon which the opinion of Judge SHERWOOD is bottomed, the instrument used in inflicting the mortal wound was a club.   There is a vast difference between the two, as shown by the better authorities on the subject.   It is true that in State v. Rector, 126 Mo. 328, this court held, as in the case of State v. Furgerson, supra, that where the indictment undertakes to charge that the crime was committed by an assault with some heavy weapon, such as a stick, rock, or club, the omission of the word "with" is fatal.   But such has never been the rule of this court, nor is it embodied in the common law rule, when the crime is committed with some kind of firearm.   An indictment is sufficient which charges the offense substantially as at common law, and the particularity necessary at common law is held not to be requisite if the indictment contains all that is substantially necessary to inform the defendant of the crime with which he is charged.   An indictment good at common law which does not specify the degree will sustain a conviction of murder in any degree defined by the statutes under

which the defendant is prosecuted.  People v. Dolan, 9 Cal. 576; McConnell v. State, 22 Tex. App. 354; People v. Willitt, 102 N. Y. 251.  In State v. Turlington, 102 Mo. 651, the indictment charged that defendant, "with a certain pistol did shoot off and discharge at and upon him, the said Cramer."  The court in its opinion said this was a departure from the usual form, by supplying or inserting the word "with" before the words "a certain pistol."  The objection was that error was committed by inserting or using the word "with" at that particular place, which the court in this case held should be inserted, and that fatal error had been committed by its omission.  In the foregoing case, the court said: "It is evident that the grammatical construction is much impaired by the departure, but it can not be said that the meaning is thereby rendered so obscure as not to sufficiently advise the defendant of the crime with which he is charged.  There is no material charge in the indictment omitted and the word needlessly and improperly inserted does not tend to prejudice the substantial rights of the defendant."  The court there cited as authority the following cases: State v. McDaniel, 94 Mo. 301; State v. Burnett, 81 Mo. 119; State v. Hughes, 82 Mo. 86; State v. Burns, 99 Mo. 471. (2)  In reading the indictment, it will be noticed that the felonious assault is charged to have been made by means of a certain pistol loaded with gunpowder and leaden balls.  Nothing more is needed.  It will also be noticed that the indictment charges: "and that the said Henry Wilson 'with' the leaden bullet aforesaid out of the pistol aforesaid, then and there," etc.  This is ample.  Nothing is left for intendment.  The defendant was fully and properly informed against.  Full and complete notice of the accusation was given him, and according to the well-established rule in this State, the judgment should be affirmed.

GANTT, J.—The defendant, a negro man, was indicted, with two other negroes, at the October term, 1900, of the circuit court of the city of St. Louis, for

murder in the first degree.   The indictment is in two
counts, and as its sufficiency is challenged, it is deemed
best to insert it in full, as follows:

"The grand jurors of the State of Missouri, within
and for the body of the city of St. Louis, now here in
court, duly impaneled, sworn and charged, upon their
oath present that Henry Wilson, Ben McGowan and
'Fate' (whose true name is to the grand jurors un-
known) on the twenty-third day of June, one thousand
nine hundred, at the city of St. Louis aforesaid, with
force and arms in and upon one Thomas Mooney, in
the peace of the State then and there being, feloniously,
willfully, deliberately, premeditatedly and of their
malice aforethought, did make an assault; and that
the said Henry Wilson, a certain pistol then and there
charged with gunpowder and one leaden bullet, then
and there feloniously, willfully, deliberately, premed-
itatedly and of his malice aforethought did discharge
and shoot off at, against and upon the said Thomas
Mooney; and that the said Henry Wilson with the
leaden bullet aforesaid, out of the pistol aforesaid,
then and there by the force of the gunpowder aforesaid
by the said Henry Wilson discharged and shot off as
aforesaid then and there feloniously, willfully, deliber-
ately, premeditatedly and of his malice aforethought
did strike, penetrate and wound the said Thomas
Mooney in and upon the body of the said Thomas
Mooney, then and there feloniously, willfully, deliber-
ately, premeditatedly and of his malice aforethought
giving to the said Thomas Mooney, with the leaden bul-
let aforesaid, so as aforesaid discharged and shot out of
the pistol aforesaid by the said Henry Wilson, in and
upon the body of the said Thomas Mooney, one mortal
wound of the depth of six inches, and of the breadth of
half an inch; of which said mortal wound the said
Thomas Mooney then and there did languish and lan-
guishing did live from the said twenty-third day of June
in the year one thousand nine hundred, until the twenty-
fourth day of June in the year one thousand nine hun-
dred; on which said twenty-fourth day of June, in the

year one thousand nine hundred the said Thomas Mooney, of the mortal wound aforesaid, at the city of St. Louis did die; and that the said Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) at the said city of St. Louis on the said twenty-third day of June in the year one thousand nine hundred, were then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, present, aiding and abetting, advising and counseling, assisting and procuring the said Henry Wilson, the offense and felony aforesaid to· do and commit. And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) the said Thomas Mooney in the manner and form and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did kill and murder; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

"And the grand jurors aforesaid, upon their oath aforesaid, do further present: that Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) on the twenty-third day of June, in the year of our Lord one thousand nine hundred, at the city of St. Louis, aforesaid, with force and arms in and upon one Thomas Mooney in the peace of the State then and there being feloniously, willfully, deliberately, premeditatedly and of their malice aforethought did make an assault; and that the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) a certain pistol then and there charged with gunpowder and one leaden bullet then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought did discharge and shoot off at, against and upon the said Thomas Mooney; and that the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) with the leaden bullet afore-

said, out of the pistol aforesaid, then and there by the force of the gunpowder aforesaid, by the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) discharged and shot off as aforesaid then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did strike, penetrate and wound the said Thomas Mooney in and upon the body of the said Thomas Mooney, then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, giving to the said Thomas Mooney, with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid by the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to these grand jurors unknown) in and upon the body of the said Thomas Mooney one mortal wound, of the depth of six inches and of the breadth of half an inch; of which said mortal wound the said Thomas Mooney then and there did languish and languishing did live, from the said twenty-third day of June, in the year one thousand nine hundred until the twenty-fourth day of June, in the year one thousand nine hundred; on which said twenty-fourth day of June, in the year one thousand nine hundred, the said Thomas Mooney of the said mortal wound, at the city of St. Louis aforesaid, did die.   And so the grand jurors aforesaid, upon their oath aforesaid, do say, that the said Henry Wilson, Ben McGowan and 'Fate' (whose true name is to the grand jurors unknown) the said Thomas Mooney, in the manner and form and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did kill and murder; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.''

The defendants, Wilson and McGowan, were duly arraigned and pleaded not guilty.  Thereafter, a severance was granted, and defendant Wilson was put on his trial and found guilty of murder in the first degree. The evidence developed that Thomas Mooney owned

a saloon at No. 205 North Levee street in St. Louis,. on the twenty-third day of June, 1900, and about nine o'clock of the night of that day, he and a nephew of his by the name of Durkin, a boy about sixteen years of age, were in the saloon and behind the counter. Mooney, the proprietor, was standing near the end of the counter, writing in a small book. Three negro men entered the saloon and ordered the drinks from Durkin. Two of them were identified as Henry Wilson, the defendant herein, and his co-indictee, Ben McGowan.. The third man, called by them "Fate," does not appear to have been recognized or known by any of the witnesses.

Either "Fate" or McGowan said he would take a glass of beer, which Durkin drew, and gave him, and then one or the other of those two said he only had ten cents, but he would take whiskey and Durkin gave him a glass of whiskey. He drank a part of it and gave the remainder to defendant. Durkin testifies that, as the defendant Wilson placed the empty glass on the counter, the negro "Fate" reached over the counter to grab the cash box, which was an open tray, containing silver dollars and half-dollars, on the shelf behind the bar, and as he did that, the defendant shot the deceased with a revolver. "Fate" did not get the cash box but turned it over and it fell on the floor, scattering the money. They all three then ran away. A door or two from Mooney's saloon, a Russian by the name of Burris Ichkowsky kept a clothing store and notions. About ten or fifteen minutes before the homicide occurred, these same three negro men went into Ichkowsky's store and this defendant bought a pistol and ten cents worth of cartridges from him. The pistol was of the bulldog pattern. They then left and in a few minutes Ichkowsky heard a pistol shot, and came out and learned Mooney was shot. McGowan was afterwards recognized by Ichkowsky and upon information given by the latter was arrested. Mooney was taken to the city hospital, and operated on for the purpose of staying the hemorrhage. The

State v. Wilson.

surgeon testified the ball pierced the lung and the intercostal artery and the spinal cord. Mooney was paralyzed by the shot and was kept alive by stimulation until about eleven o'clock in the forenoon of the next day, when he died.

The wound was necessarily fatal. The post-mortem revealed no other cause of death. Durkin testified that there were no persons present at the killing of his uncle but the three negroes, his uncle and himself. That Mooney said nothing to the negroes and was doing nothing when he was shot. When deceased heard McGowan jump on the counter, he turned to look around and just then defendant shot him. Durkin had never seen the defendants before, but they stood in three feet of him when they were drinking and he positively identified defendant as the man who shot his uncle.

Officers Gaffney and Flynn arrested defendant. He made a statement to them. He fully corroborated Ichkowsky's account of his purchase and Durkin's account of their buying the drinks and of "Fate's" effort to grab the money box and says the boy knocked it out of his hand, and says that just then Mooney turned and looked as if he was going to pick up something, and then, he says, "I shot right at him;" that they then ran out, and ran south on the levee three or four blocks and he threw the pistol in the river. He and McGowan then went over to East St. Louis and after three or four hours, returned to the city and separated, and he went up to 808 North Twelfth street, where he was arrested. He further stated that he went to Mooney's to get some of his money. Said he had only been in St. Louis about three weeks. His home was in Memphis, Tennessee. He didn't know "Fate's" other name, and knew McGowan, as Shiner. The officer told him they had arrested McGowan and that he had told him about the shooting and then defendant told the officers all about it, as above detailed.

The defendant testified in his own behalf and denied that he was in St. Louis the night of the homicide;

denied he ever saw McGowan but once before he was arrested. Denied the officer's evidence in toto.

I.    This cause was transferred to the Court in Banc, owing to a division of opinion as to the sufficiency of the indictment, the insistence being that the indictment was fatally defective, because of the omission of the word *"with"* after the words, "And that the said' Henry Wilson," and before the words, "a certain pistol," and that lacking said word, the indictment did not show "with" what weapon the murder was committed.

Upon a rehearing in Banc, we all hold that the indictment is sufficient. It is in harmony with well-settled precedents at common law, and in this State and other States of the Union. [1 Wharton's Precedents of Indictments and Pleas, 115, 117-117a and b; Bishop's Directions and Forms, sec. 520; 3 Chitty's Crim. Law, * page 752.]

As was said in State v. Turlington, 102 Mo. 651, the use of the word "with" before the word "pistol" or "gun," in charging a homicide by shooting another, is not only entirely unnecessary but would mar the strength of the allegation. While the word was used in that indictment, the contention by the defendant was that it vitiated the indictment, but we held that the needless· insertion of the word did not prejudice any substantial right of the defendant.

In State v. Evans, 158 Mo. 589, an indictment in all material respects like the one under consideration was unanimously approved by Division Two of this court, and in that case it was pointed out that there was no conflict between the conclusion therein reached and the minority opinion in State v. Rector, 126 Mo. 328, and the decision in State v. Furgerson, 152 Mo. 92. In those cases, the homicide was committed with an axe or some heavy weapon or instrument and it was essential to charge with what instrument the assault was committed; and the omission of the word "with" before the instrument left the indictment lacking an averment of the instrument *with which* the deceased was

killed.    State v. Hagan, 164 Mo. 654, is also cited, but it is to be noted that in that case, while the word "with" was omitted, the indictment was not held defective for that reason, but solely because there was no allegation that of the mortal wounds alleged the deceased "did" die or "died."    While it is necessary to charge that an assault was made *with* an axe, or a sword or a bludgeon or "with some heavy weapon or instrument" the exact nature of which is unknown, the universal idiom in describing an assault or homicide by shooting is to allege that the offender "a certain pistol then and there charged with gunpowder and leaden balls *did discharge* and *shoot off* at, against and upon" the body of his victim, just as it is averred in this indictment, followed by the averment of the giving of the mortal wound *with* the leaden bullet so shot out of said pistol.

The case of State v. Prendible, 165 Mo. 329, loc. cit. 348, while correctly decided in harmony with State v. Turlington, 102 Mo. 651, because the word "with" did not vitiate the indictment, is not in "some of the language used," in harmony with the views herein expressed.    So much of that opinion as disapproves State v. Turlington as to the necessity of the use of the word "with" in an indictment for assault or homicide by shooting and framed after the manner of the one at bar, is itself disapproved.    It has already been disapproved by Division Two in State v. Heinzman, 171 Mo. 629, at this term.    State v. Evans, 158 Mo. 589, in all material respects the counterpart of this indictment, was followed in State v. Gleason, decided by Division Two at this term, and found at page 259 of this volume.

II.    The instructions were full and correct, on all propositions of law arising in the case, necessary for the guidance of the jury.

III.    The evidence was ample to sustain the verdict of murder in the first degree.    That defendant deliberately provided himself with a deadly weapon and with his two companions went to the saloon of the deceased for the purpose of robbing him, and slew him

in the perpetration of the attempted robbery, admits of no doubt. That his admissions of his guilt were obtained through the artifice of leading him tQ believe .that his companion in crime had already confessed, did not affect its competency. Outside of that, however, he was completely identified as one of the guilty trio who conspired to rob deceased, and murdered him in the prosecution of their felonious enterprise.

The case was fairly and impartially tried and no ·error appearing in the record, the judgment is affirmed, and the sentence of the law directed to be inflicted. All ,concur.