THE STATE v. GRAY, Appellant.

In Banc, March 4, 1903.

1. **Indictment: MURDER WITH PISTOL.** The indictment set out in this case is held sufficient on the authority of State v. Wilson, 172 Mo. 420.

2. **Remarks in Presence of Jury: KNOWLEDGE OF OFFICERS.** As the sheriff was bringing the defendant through the corridor of the courthouse, the wife of deceased remarked aloud that, "I want to see the man that murdered my husband; that is the man." The jury at that time were confined in an adjoining room and could have heard the remark, but it does not appear that they actually heard it, nor is there any reason for believing that it in the slightest degree influenced them in arriving at a verdict of guilty, and besides no officer of the court knew the woman intended to make the remark or in anywise connived at it. *Held*, that the refusal of the trial court to grant a new trial on this ground will not be disturbed.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

AFFIRMED.

*Henry B. Davis* for appellant.

(1) The indictment is fatally defective. The essential word "with," showing the weapon which

was used, is omitted. "The word 'with' being omitted therefrom there is no allegation showing with what the alleged homicidal act was done. In criminal prosecutions everything constituting the offense must be set forth with certainty and clearness; nothing must be left to be implied. This is true of all felonies. If an essential word be dropped it is fatal." State v. Rector, 126 Mo. 341; State v. Wilson, 172 Mo. 420. (2) The announcement or declaration of Mrs. Jones, a witness in the case and the wife of the man alleged to have been murdered, made in the presence of the jury but during a recess of the court, was eminently improper as being calculated to inflame the minds of the jury and excite their animosity against the defendant so as to incline them to a severer punishment than without such appearance and declaration the jury would have rendered. Her declaration so made was not evidence and would have been excluded by the court, but might naturally unduly influence the jury. (3) It is evident from the record that the alleged confession was extorted from the defendant by a moral thumbscrew process or cajoled from him by specious hopes. If not, why should the defendant deliberately confess away his own life and put his neck in the hangman's noose?

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) The indictment follows approved forms and is sufficient. State v. Kindred, 148 Mo. 270; State v. Turlington, 102 Mo. 642. (2) The indictment, in cases of this character, need not charge that the murder was committed in an attempt to rob the person slain. State v. Foster, 136 Mo. 653. (3) The defendant excepted to the action of the court on the ground of the alleged failure of the court to fully instruct on all questions of law, and particularly, to the failure of the court to give an instruction on murder in the second degree. The evidence in this case clearly shows that

the motive for the crime was robbery. In such cases no instruction for murder in the second degree should be given. State v. Sexton, 147 Mo. 89; State v. Foster, 136 Mo. 644; State v. Hopkirk, 84 Mo. 278; State v. Miller, 100 Mo. 606. (4) The evidence is clear that the shot fired by the defendant was sufficient to have produced the death of the deceased, but even though it should not be clear that the shot fired by defendant caused the death of the deceased, still it is clearly shown that the defendant and Pitts had previously planned the murder of the deceased; that they met at the appointed place and the defendant was aiding, abetting and encouraging in the perpetration of the crime, and he is, therefore, as guilty as though he had fired the fatal shot. Instruction 2 is, therefore, a correct enunciation of the law. State v. Schmidt, 36 Mo. 652. (5) Relative to the affidavit filed by defendant's counsel as to the remarks made by the wife of the deceased in the hearing of the jury, it is only necessary to say that that matter was submitted to the trial court, and its finding will not be disturbed. It does not appear that the jury actually heard these remarks, and if they had, such remarks could not have tended to affect the rights of the defendant. The jury would certainly have paid no attention thereto, because it is evident that they were simply conclusions of the wife of the deceased and were not statements of any fact in reference to the killing.

GANTT, J.—On October 25, 1901, the grand jury of St. Louis preferred an indictment against Sampson, alias "Bud," Gray for the murder of George Jones, in said city, on the night of the ninth day of June, 1901.

The deceased and defendant and his co-indictee, John Pitts, were all negroes. The deceased and the defendant were laborers in the employment of the Howard & Evans Clay Pipe Company, near Macklin avenue, in St. Louis. On the morning of June 10, 1901, the dead body of George Jones was found lying about two hundred feet east on Macklin avenue, and about

four hundred and fifty feet north of Manchester Road. There were two bullet holes through his head, and a knife was found sticking in his right wrist. The *corpus delicti* was fully established and the identification of the dead body as that of George Jones was established beyond the peradventure of a doubt. The evidence tended to establish that Jones was an industrious man and was known to have about one hundred and fifty dollars on his person on the day he was slain. The defendant and John Pitts were together on that night, and after midnight slept until morning in the same bed at the house of Ben Nelson, another negro. Pitts and defendant were both arrested and Pitts made a confession, and then the defendant made a full confession.

The evidence fails to disclose, under the most rigid cross-examination, any flattery of hope or torture of fear to obtain the confession. The defendant stated that Pitts had seen Jones with considerable money and a watch, and as it was a custom of deceased to sleep with defendant in the neighborhood of the sewer pipe works, they conspired to kill him to get his money. It was first agreed that defendant should sleep with Jones that night, and leave the door unfastened and in the night he was to give a loud cough as a signal for Pitts to come into the room and kill deceased while asleep. Defendant, however, became afraid that Pitts might strike him instead of deceased, and they abandoned that plan. They then hit upon the scheme of enticing him from the house and killing him by striking him from the rear with a bludgeon. Accordingly they prepared themselves with a pistol, which they secreted, and with a lead pipe. Defendant went to the temporary apartments where deceased was then lodging; he told him that there were some women who wished to see him and they repaired to the designated place. It had been agreed that Pitts should strike the deceased with the leaden pipe; but Pitts feared to do this, and because of his hesitation, the defendant drew his pistol and

fired at the deceased, striking him in the head. Then Pitts grabbed the pistol and also fired a shot into the head of the deceased; then they took his watch and one dollar in money.

The evidence on behalf of the State showed that the defendant had given the watch to one Annie Miller, and by her direction it was found in a pawnshop, recovered and identified by the wife of the deceased as belonging to her. She identified it by number and otherwise. The confession was also corroborated by the finding of the pistol in the hands of a woman to whom he said he had given it. The wife of the deceased testified that he had one hundred and fifty dollars on his person when he left home on June 9th.

The defendant offered no evidence on his part, nor did he offer any instructions.

But a single objection was made to the introduction of testimony, and that objection was sustained. Of course, it follows that no exceptions were taken to the admission of any testimony by the court, and in justice to counsel for defendant, it may be said that no exceptions were warranted. The evidence introduced was relevant, material and very conclusive. As the indictment is challenged, it is reproduced here.

"The grand jurors of the State of Missouri within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn and charged, upon their oath present, that Sampson, alias 'Bud,' Gray and John Pitts, on the ninth day of June, in the year of our Lord, one thousand nine hundred and one, at the city of St. Louis aforesaid, with force and arms in and upon one George Jones in the peace of the State then and there being feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did make an assault; and that the said Sampson, alias 'Bud,' Gray and John Pitts a certain pistol then and there charged with gunpowder and one leaden bullet, then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did discharge and shoot off, to, at, against and upon the said George Jones;

and that the said Sampson, alias 'Bud,' Gray and John Pitts with the leaden bullet aforesaid, out of the pistol aforesaid, then and there by the force of the gunpowder aforesaid, by the said Sampson, alias 'Bud,' Gray and John Pitts discharged and shot off, as aforesaid, then and there feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did strike, penetrate and wound the said George Jones in and upon the head and body of the said George Jones giving to the said George Jones then and there, with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid by the said Sampson, alias 'Bud,' Gray and John Pitts in and upon the head and body of the said George Jones one mortal wound of the depth of six inches and of the breadth of half an inch; of which said mortal wound the said George Jones then and there instantly did die.  And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Sampson, alias 'Bud,' Gray and John Pitts the said George Jones in the manner and form and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did kill and murder; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.''

I.    The indictment is in all essentials identical with the one which we have this day approved in State v. Henry Wilson, 172 Mo. 420, and for the reasons advanced in that case and without repeating them, the indictment must be held to be sufficient and the criticisms of it unavailing.

II.    As already said, there was no evidence tending even to overcome the prima facie case made by the State, that the confession was obtained without the hope or flattery of reward and without being extorted by fear.  It was, moreover, strongly corroborated by evidence *aliunde*.

III.    The motion for new trial was accompanied by an affidavit that during the recess of the court, the widow of the deceased, just before the convening of

court, was in the corridor of the court building, and as the sheriff was bringing the defendant out to the courtroom, said in a loud voice, ''I want to see the man that murdered my husband; that is the man;'' that the jury at that time were confined in an adjoining room and could have heard this statement; that the door the jury room was open, and that the sheriff immediately closed the door. The affidavit stating these matters was submitted to the circuit court. It did not appear that the jury actually heard these remarks of the widow of Jones, but it is obvious that no officer of the court knew the woman was going to do what she did, or in any manner connived at it. There is not the slightest reason for believing that the conduct of the woman in any manner affected the jury in arriving at their verdict. We see no reason for disturbing the finding of the court in refusing a new trial on this ground.

The evidence fully established the guilt of the accused, and the verdict of the jury is abundantly sustained by the evidence. The instructions were such as have often met our approval, and the judgment is affirmed, with directions that the sentence of the law be carried into execution. All concur.