## THE STATE v. GREGORY, Appellant.

### Division Two, November 17, 1903.

1. **Criminal Law:** INFORMATION: SUFFICIENCY: RAISED FOR FIRST TIME IN APPELLATE COURT. The sufficiency of an indictment or information can be raised for the first time in the appellate court even though no demurrer or motion to quash was filed in the circuit court.

2. ———: ———: VERIFICATION. Since the Act of March 13, 1901 (Laws 1901, pp. 138, 139), the prosecuting attorney, both in felonies and in misdemeanors, may proceed by information verified by his own oath upon information and belief, or he may base his information upon the oath of some person competent to testify in the case, or upon an affidavit filed by a private citizen either with the clerk in vacation or with the prosecuting attorney.

State v. Gregory.

3. ———: ———: USE OF "WITH." While the use of the word "with," in an information charging murder, before the words "a certain revolver pistol" immediately after charging the assault, does not constitute reversible error, it is a departure from the usual form, and much impairs the grammatical and rhetorical construction of the information.

4. ———: ———: ASSAILING SUFFICIENCY BY OBJECTING TO TESTIMONY. The method of assailing the sufficiency of an indictment or information by objecting to any testimony under it, is condemned as an innovation in criminal practice not to be tolerated.

5. ———: INSTRUCTIONS WHETHER REQUESTED OR NOT: NO EXCEPTIONS. The statute which requires the court to instruct upon all questions of law in the case does not relieve a defendant of the duty of saving his exceptions to the failure of the court to so instruct.

6. ———: INTERROGATING WITNESS: ASSUMING CONCEDED FACT. When a fact is conceded by both sides, it is not error for the court to treat it as an established fact. Where defendant's own testimony shows that he shot and killed deceased, it was not error to ask a witness the question, "Where were you at the time deceased was shot?"

7. ———: FAILURE TO ESTABLISH MOTIVE. Where the evidence showed that defendant deliberately shot and killed deceased without any provocation, the failure to establish defendant's motive did not mitigate his offense or entitle him to an acquittal.

8. ———: MURDER, FIRST DEGREE: NO EVIDENCE OF PASSION: CASE STATED. The evidence showed that deceased, a white man, went to a picnic attended by both white and colored people, and that, sometime after dark, deceased with several other white men went to a barn about one hundred yards from the picnic grounds in company with some negro girls of bad character; that while there deceased accused one of the negro girls with having stolen his money, but she denied having it, and ran from him, and left the barn, and he pursued her; that defendant, a negro man, was standing about midway between the barn and the picnic grounds, and the negro girl and deceased ran by him. The testimony for the State showed that as deceased and the negro girl passed defendant, he drew his revolver and fired one shot in the direction of deceased, missing him; that the firing of this shot stopped deceased's pursuit of the girl, and he turned and started towards defendant, whereupon defendant shot deceased, killing him. Defendant testified that some one fired the first shot, and that at that deceased turned and came towards defendant, and when in about ten feet of him said, "What have you got to do with it," and defendant answered, "Oh, nothing, Cap.;" that deceased then said, "I will cut your d— throat," and

started toward defendant who backed off and told him not to come further, and when deceased was within five feet of him, defendant drew his revolver and shot. All the other witnesses testified that defendant said nothing. *Held*, that the evidence was sufficient to sustain a verdict of guilty of murder in the first degree. *Held*, further, that since there was no pretense that the girl was related to defendant, or that deceased was armed or threatening the girl when they passed defendant, the mere fact that deceased was pursuing the girl could not have aroused in defendant sufficient passion to reduce the killing to murder in the second degree.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley*, Judge.

AFFIRMED.

*Geo. H. Traylor* for appellant.

(1) The information was filed by the prosecuting attorney upon his own knowledge, information and belief, and not upon the affidavit of any person who was a competent witness in the case as the law directs. R. S. 1899, sec. 2478. (2) It is the duty of the court in criminal cases to instruct the jury upon all phases of the case whether the instructions are requested or not. Laws 1901, p. 140; State v. Branstetter, 65 Mo. 149; State v. Gassert, 65 Mo. 352; State v. Little, 67 Mo. 624; 57 Mo. 131; 62 Mo. 597; 64 Mo. 107. The testimony of Ben Ballard, the State's strongest witness, shows that deceased was running a negro woman, one of defendant's own color, in the dark, in an angry manner, past defendant, which was certainly enough to arouse the passion of defendant to a warm blood. At this time a shot was fired in the rear; deceased as quick as lightning turned upon defendant and was within four or five steps and still advancing on defendant when shot. This testimony of the State's is amply sufficient to warrant an instruction for murder in the second degree, to say nothing of defendant's testimony. (3) The court erred in permitting counsel for the State to ask witness Dickerson, over defendant's objection, the question, "Where were you at the time deceased was shot?" This was

assuming that deceased was shot.    The State must prove
it.

*Edward C. Crow,* Attorney-General, and *Sam B.
Jeffries,* Assistant Attorney-General, for the State.

(1)    The prosecuting attorney may file the infor-
mation based on the affidavit of a private citizen, or he
may file the information and have it sworn to by some
person competent to testify in the case, or he may file it
under his own oath of office upon information and belief.
(2)    While it is the duty of the court to instruct on all
the law of the case, yet it is also incumbent upon defend-
ant to either ask such instructions or to except to the
court's failure to so instruct at the time the instructions
are given to the jury.    This he did not do, and the ob-
jection comes too late after verdict.    State v. Meadows,
156 Mo. 110; State v. Waters, 156 Mo. 132; State v.
Palmer, 161 Mo. 152; State v. Huff, 161 Mo. 459; State
v. McGinnis, 158 Mo. 105; State v. West, 157 Mo. 309;
State v. Norman, 159 Mo. 531.    Not having asked an in-
struction on murder in the second degree and not having
excepted to the failure of the court to so instruct on that
qustion at the time the instructions were read to the
jury, it must be taken for granted that defendant laid
no claims thereto.    He defended on the theory and with
the belief that the question of murder in the second de-
gree was not at issue.    By his failure to so request and
except to the action of the court to instruct on murder
in the second degree, he will be considered as waiving
everything save murder in the first degree and self-
defense.    State v. Brown, 168 Mo. 449.    (3)    The ob-
jection that the court erred in permitting witness Dick-
erson to be asked where he was when deceased was shot,
is not worthy of consideration, for the reason that the
evidence not only shows that Marshall was shot, but that
defendant admits the shooting, and undertakes to justify
the shooting on the ground of self-defense.    Under these

circumstances, how could defendant have been prejudiced by the question? It was not an assumed or hypothecated fact, but an established truth admitted and recognized by both parties in the trial.

GANTT, P. J.—From a conviction of murder in the first degree the defendant appeals. The murder was charged to have been committed in New Madrid county on August 19, 1902. The trial and conviction occurred in said county on December 5, 1902. On August 19, 1902, the negroes in and around Sikeston had a picnic or barbecue in Big Prairie township on what is locally known as Frank Smith's place. It would seem that both whites and blacks attended the barbecue, separate tables having been provided for each.

Late in the evening several young white men, among others the deceased, George Marshall, went to this barbecue and sometime after dark the deceased and several other white boys went to a hay shed or barn, estimated to be from fifty to one hundred yards from the barbecue grounds, with some negro girls of bad character. While there the evidence tends to show quite conclusively that the deceased asserted that one of the negro girls had stolen his money, and he was attempting to get her to give it to him, but she denied having it and ran from him and left the barn and he pursued her. The evidence tended to show that the defendant was standing about midway between the barn and the barbecue grounds, and the negro girl and deceased ran by him.

The defendant testified in his own behalf that he shot deceased with a revolver and the testimony for the State was practically unanimous that as deceased and the girl passed defendant he drew his revolver and fired one shot in the direction of deceased but too high to strike him. The firing of this shot stopped Marshall's pursuit of the girl and he turned and started toward defendant, whereupon defendant lowered his pistol and shot deceased in the bowels near the navel.

The evidence on the part of the State tends strongly to show that deceased was entirely unarmed, having neither a revolver nor a knife and that no words whatever passed between defendant and deceased. The defendant alone on his part testified that some one fired the first shot and at that the deceased stopped and said, "Shoot you son of —," and came toward defendant, and when in about ten feet of defendant said to him, "What have you got to do with it," and he, defendant, answered, "Oh, nothing, Cap." Deceased then said, "I will cut your d—d throat," and started toward defendant who told him not to come and backed off, and when in five feet of him defendant pulled his revolver and shot. All the other witnesses say defendant said nothing.

After shooting deceased defendant fled and hid himself in a barn where he was found next day. There was no evidence of any previous difficulty between deceased and defendant.

The information is challenged and we reproduce it. It is as follows:

"State of Missouri, County of New Madrid, ss.

"In the circuit court of said county, September term, A. D., 1902.

"Now comes Murry Phillips, Jr., prosecuting attorney of New Madrid county, Missouri, and under his oath of office and upon his own knowledge, information and belief, and for amended information herein, gives the court to be informed and understand, that one Gus Gregory, on the 19th day of July, A. D. 1902, at the county of New Madrid and State of Missouri, in and upon one George Marshall then there being, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did make an assault; and that the said Gus Gregory, with a certain revolver pistol, the same being a deadly weapon and then and there loaded and charged with gunpowder and leaden balls, and which said revolver pistol he, the said Gus Gregory,

in his right hand then and there had and held at, to and against him, the said George Marshall, did, then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, shoot off, and discharge; and that the said Gus Gregory, with the leaden balls aforesaid, out of the revolver pistol so shot off and discharged by him, the said Gus Gregory as aforesaid, him, the said George Marshall, did, then and there, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, strike, penetrate and wound; then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, giving to him, the said George Marshall, by means of the leaden balls aforesaid, so shot off and discharged by him, the said Gus Gregory, out of the revolver pistol aforesaid, one mortal wound of the depth of six inches and of the breadth of one inch, and in and upon the abdomen, and near the navel of him, the said George Marshall; of which said mortal wound, he, the said George Marshall then and there languishing did live until the 20th day of July, A. D., 1902, on which said 20th day of July, A. D., 1902, at the county of Scott and State of Missouri he, the said George Marshall, of the mortal wound aforesaid did die.

"And so the said Murray Phillips, Jr., prosecuting attorney as aforesaid, under his oath of office and upon his own knowledge, information and belief does say, and give the court to be informed, that the said Gus Gregory him, the said George Marshall, in manner and form aforesaid, and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought did then and there at said county of New Madrid, kill and murder, against the peace and dignity of the State.

"Murry Phillips, Jr.,
"Prosecuting Attorney of New Madrid county, Missouri.

"Murry Phillips, Jr., prosecuting attorney, makes oath and says that the facts stated in the foregoing information are true according to his best knowledge, information and belief.

"MURRY PHILLIPS, Jr.

"Subscribed and sworn to before me this 18th day of September, A. D., 1902.

"JOHN A. MOTT.

"Clerk circuit court.

"Filed September 18, 1902, JOHN A. MOTT, Clerk."

I. The first assignment of error is that the court erred in refusing to permit defendant to file a demurrer after having entered his plea of not guilty and after the jury was sworn. As the sufficiency of the indictment can be raised in this court for the first time even though no demurrer or motion to quash was filed in the circuit court, the refusal to permit it to be filed after issue joined is of no moment in this court, but we will examine into the information to ascertain its sufficiency. The point is that the information was not verified by the affidavit of any person who was a competent witness in the case but was upon the knowledge and information of the prosecuting attorney himself.

Since the amendments to article 3, chapter 16, Revised Statutes 1899, by the Acts of March 13, 1901 (Laws 1901, pp. 138-139), section 2477, Revised Statutes 1899, is applicable to prosecutions for felonies and expressly authorizes the prosecuting attorney to file informations verified by his own oath, and his "verification may be upon information and belief."

There is no conflict between this section and 2478, Revised Statutes 1899, as amended by the Laws 1901, page 139.

The prosecuting attorney may proceed by information verified by his own oath upon information and belief or he may base his information upon the oath of some person competent to testify in the case or upon the

affidavit filed by a private citizen either with the clerk in vacation or with the prosecuting attorney.

Though not made a ground of objection by defendant, we notice that the prosecuting attorney uses the word "with" before the words "a certain revolver pistol" immediately after charging the assault. Lest we be understood as approving this form, we take occasion to say that while not constituting reversible error, "it is evident that the grammatical and rhetorical construction of the information is much impaired by the departure" from the usual form. [State v. Turlington, 102 Mo. loc. cit. 651; State v. Gleason, 172 Mo. loc. cit. 268; State v. Evans, 158 Mo. 603; State v. Wilson, 172 Mo. 420; State v. Gray, 172 Mo. 435.]

The information was well enough and the demurrer should have been overruled even if timely filed. As to the proposition that the court should have sustained the objection to any testimony under the indictment, obviously no error occurred in overruling it because the information was entirely sufficient, and, moreover, such a method of assailing the sufficiency of an indictment has more than once received the condemnation of this court, as an innovation in criminal practice not to be tolerated. [State v. Risley, 72 Mo. 610; State v. Meyers, 99 Mo. 107; State v. Duncan, 116 Mo. 288.]

II. It is next insisted that the court should have given the eleventh instruction offered by defendant which authorized the jury to take in consideration the evidence as to the previous good character of defendant. The answer to this contention is that the court of its own motion had already given an instruction fully covering the subject in its instruction numbered 9, and we have always ruled that when this is done it is not error to refuse another reiterating the charge, and we have condemned the giving of a great multiplicity of instructions.

III. It is insisted that the court should have sub-

mitted to the jury whether defendant was guilty of murder in the second degree. That there was ample evidence on which to base a verdict of murder in the first degree we think is plain. Without the slightest provocation in the way of an assault, the defendant shot to death an unarmed man. The defendant neither asked an instruction on murder in the second degree nor saved any exceptions to the failure of the court to instruct on any degree of homicide less than murder in the first degree.

Our attention is again called to Laws 1901, page 140, wherein the court is required to instruct on all the law applicable to the case, whether requested or not.

In State v. Vinso, 171 Mo. loc. cit. 591, we considered this change in the statute and held that it did not relieve defendant of the duty of saving his exceptions to the failure of the court to so instruct. [State v. Albright, 144 Mo. 643; State v. Cantlin, 118 Mo. 100; State v. Williams, 136 Mo. 293.]

The contention of the defendant that the fact that deceased was pursuing the negro girl was sufficient to arouse sufficient passion in defendant to reduce his offense to murder in the second degree, is untenable. There is not the slightest pretense that the girl bore any relationship by blood or marriage to defendant, or any other relation which would have justified him in assuming her defense in the circumstances, nor was the deceased armed or threatening the life of, or great bodily harm to, the girl when they passed defendant, and when he began to shoot at deceased. There is no evidence of any just provocation which would reduce this homicide to murder in the second degree.

IV. Because the counsel for the State asked the witness Dickerson, "Where were you at the time Marshall was shot?" it is insisted that the question was prejudicial for the reason that it assumed that deceased was shot. In view of the issue tendered and defendant's

own testimony that he shot and killed deceased, this assignment must be held to be without merit.

When a fact is conceded by both sides it is not error for court or counsel to treat it as an established fact.

V. The court fully instructed the jury on the weight of the evidence and credibility of witnesses, in the form long approved by this court, and the seventh assignment is likewise without support in the record.

VI. The verdict was fully supported by the evidence and, hence, the eighth and ninth assignments must be overruled. The failure to establish the motive of defendant did not entitle him to an acquittal nor mitigate his offense after the evidence had shown that he deliberately shot and killed the deceased without any provocation whatever. [State v. David, 131 Mo. 396, 397.]

While the evidence discloses facts discreditable to deceased and his white companions in their association with the negro women on the night of the homicide, it is free from any justification on the part of defendant. His act in shooting the deceased was without any just or lawful provocation and was utterly indefensible.

The case was fairly tried and there appears no reason for interfering with the verdict of the jury and the sentence of the circuit court.

The judgment is affirmed and the sentence which the law commands is directed to be executed.

*Burgess* and *Fox, JJ.,* concur.