## THE STATE v. HAYS CRITTENDEN, Appellant.

### Division Two, November 21, 1905.

1. **MURDER: Sufficiency of Evidence.** The evidence in this case, which was a prosecution for murder in the first degree, is examined, and held sufficient to justify the verdict finding defendant guilty of murder in the second degree.

2. ————: **Refusing Defendant's Instruction: Covered by Others.** Where the instructions given for the State fully cover the law invoked in an instruction requested by defendant, no error is committed in refusing defendant's instruction.

3. **APPEAL: Criminal Case: Affidavit.** Following State v. Smith, 190 Mo. 706, it is held that the statute does not require an affidavit as a condition precedent to the granting of an appeal in a criminal case.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General for the State.

The evidence was sufficient to send the case to the jury, and fully sustains the verdict. State v. Franke, 159 Mo. 535; Greenleaf on Evidence, sec. 440; Starkie

on Evidence (10 Ed.), 173; State v. Duncan, 116 Mo. 288; State v. Kaiser, 124 Mo. 651; State v. Sanford, 124 Mo. 487.

GANTT, J.—On November 9, 1903, the grand jury of the city of St. Louis returned an indictment against this defendant, charging him with murder in the first degree of Hugh J. McCartney on the 10th day of May, 1903, in the city of St. Louis. As the. indictment is in all respects sufficient and in a form often approved by this court, it is unnecessary to reproduce it in full. On November 17, 1903, the defendant was duly arraigned, pleaded not guilty and the case was continued. On March 18, 1904, defendant was put upon his trial and convicted of murder in the second degree, and his sentence assessed at ten years in the penitentiary. Motions for new trial and in arrest of judgment were duly filed, considered by the court and overruled, and an appeal was granted to the defendant; no affidavit for appeal was filed before the same was allowed.

On the part of the State the evidence tended to show that in May, 1903, and prior to the difficulty in which McCartney was killed, the Shafter Wrecking Company was engaged in making an extensive excavation on Clark avenue between Targee and Fifteenth streets in St. Louis, and the defendant, Crittenden, William Washington, Philip Scott and a number of others were employed by said company in doing said work at that time. The men just named were a portion of what was called the night shift, and worked from seven p. m. till six a. m. It was the custom of the men to stop work and eat a meal every night at twelve o'clock, and to begin work again at one o'clock. During this midnight recess on May 10th, a number of these men, mostly negroes, indulged in drinking intoxicating liquor; as a result of their dissipation that night, most of them had fallen asleep. About five minutes before one o'clock, Mr. Shafter fired his pistol for the purpose of

waking them up to go to work. Mr. Shafter was in charge of the work. Hugh J. McCartney was on that night and for some five months prior thereto had been a police officer of the city of St. Louis. He was on duty that night, and his beat was on Clark avenue, he was dressed in his uniform and was recognized as an officer by the men on this work. When Shafter fired the pistol, McCartney heard the shot and came up and inquired who fired it. Scott, one of the workmen, told him, and thereupon McCartney began talking to Shafter about firing in the city. While he was talking to Shafter, the defendant Crittenden, Washington and others commenced to quarrel with McCartney and to call him vile names, saying, "If he was a negro you would arrest him and would not give him a chance." Washington had a pistol in his hand at that time, but no one seemed to know just where he got the same. McCartney commanded them to stand back, saying that they had nothing whatever to do with it, and addressing himself to Washington told him to put up his gun and go into the house. As the men refused to stand back, but crowded about him and persisted in following him, using rough language to him, McCartney struck at them and hit Washington and knocked him down. Washington arose to his feet, drew his pistol and shot at McCartney and the latter returned the shot. The defendant Crittenden then ran into the house, which was very near by, and came out of a side door with a pistol in his hand, and stopped in a passway between two buildings and fired twice at McCartney; immediately after the firing of these two shots, McCartney ran east on Clark avenue, and the defendant followed him, still carrying his pistol. At the time the defendant fired the two shots at McCartney, the latter was facing the defendant with his right side turned towards the defendant. Police officer Hough heard the shooting and ran towards McCartney; he saw the latter run east on Clark avenue, followed by a crowd of negroes. McCartney ran into a

saloon and then into a back yard. The police wagon was procured and he was taken to the dispensary and thence to the hospital. While defendant Crittenden was in the house the difficulty between McCartney and Washington had ended in the death of Washington. In the melee it appears that the defendant was wounded, as there was a bruise on the side of his head. After McCartney fled defendant returned to the same house in which he had procured the pistol, still carrying the pistol in his hand. The defendant was shortly afterwards arrested by officer Lang. At the time of making the arrest Lang found the defendant in bed and the wound on the right side of his head bleeding. At the city hospital an examination disclosed the fact that McCartney was wounded in the abdomen, the ball entering a little below the navel and to the right. The bullet perforated the small bowel eight times. An operation was performed by the surgeons at the hospital, but in spite of their efforts McCartney died from the wounds inflicted aforesaid by the defendant on the 31st day of May. No objections were taken or exceptions saved to the evidence on behalf of the State. The defendant offered no evidence, and at the close of the State's case moved for an acquittal in the form of a demurrer to the evidence, which was overruled. The court instructed the jury of its own motion and also gave instructions at the instance of the circuit attorney. No exceptions were saved to the giving of the State's instructions, or to those given by the court of its own motion. The defendant asked one instruction in addition to his demurrer to the evidence, which was in the following words: "If you find that the defendant fired no shot or shots at the deceased, Hugh McCartney, but you have a reasonable doubt as to whether defendant's bullet struck and killed said Hugh McCartney, then you should give the defendant the benefit of such doubt and acquit him," which said instruction the court refused, and the defendant saved his exception to the action of the court.

I.   The defendant is not represented by counsel in this court.   No assignments of error have been filed and no brief in support thereof, but, as in duty bound, we have examined the record to see if any reversible error was committed against the defendant.   As already said, the indictment is sufficient.   It is identical with the indictment in the case of State v. Wilson, 172 Mo. 420, which was approved by this Court in Banc, and was followed in State v. Gray, 172 Mo. 430.

II.   The evidence was sufficient to send the case to the jury and fully sustains the verdict.   Without any cause or provocation whatever, the defendant engaged in an assault upon the police officer of the city of St. Louis, who was at the time engaged in doing his duty as such.   When that officer resisted, the defendant ran into the house and procured a pistol and concealed himself in a passageway between the two houses, and from this place fired two shots at the officer, one of which, the testimony tends to show, accomplished the felonious purpose of the defendant to kill and murder the officer. While it is true that the officer had engaged in a combat with William Washington, and that the latter was killed by the officer, up to the time he was shot by the defendant the officer showed no signs of retreat nor any evidence of having been wounded by Washington.   The combat between Washington and the deceased McCartney had ended by the death of Washington while the defendant was in the house procuring his revolver.   Immediately after the defendant fired his two shots at McCartney, McCartney gave up all idea of continuing the conflict and began to run east on Clark avenue, the defendant pursuing the wounded officer until another officer came to the rescue.   Taking all the evidence in this connection into consideration with that of the physican as to the wound which caused officer McCartney's death, it is apparent that the jury had ample testimony to warrant them in finding that the defendant

fired the fatal shot which caused the death of the officer, and in finding that the shot fired by Washington did not cause his death, independently of the question of the liability of the defendant for the death of the officer if Washington's shot in fact inflicted the fatal wound and the defendant was at the time aiding, abetting and assisting in the unlawful assault upon the officer. [State v. Duncan, 116 Mo. 288; State v. Kaiser, 124 Mo. 651.]

III. There was no error in refusing the defendant's demurrer to the evidence at the close of the State's case; as before remarked, the evidence was amply sufficient to sustain a conviction if believed by the jury, as it evidently was. The sixth and seventh instructions given for the State were as follows:

"6. And you are further instructed that every person that is present at the commission of the crime, knowing the intent of and willfully and unlawfully and intentionally aiding, abetting and assisting or for the purpose and with the intent of so aiding, abetting and assisting, if necessary, the person who actually commits the crime, is liable as a principal and equally guilty with the one actually committing such crime; but mere presence at the commission of a crime does not render a person liable as a principal or otherwise.

"7. You are further instructed that even though you believe from the evidence that Hugh J. McCartney was shot and killed at the time and place charged in the indictment and defendant was then and there present and did then and there shoot at and try to kill said deceased, yet if you believe the said McCartney was struck and murdered and died from the effects of a wound made by a bullet fired from a pistol in the hands of some person other than defendant, you will acquit defendant, unless you believe that he and the person who actually shot and killed said McCartney were then and there acting together with a common intent and purpose and design, or that defendant was then and there pres-

State v. Crittenden.

ent knowingly and intentionally aiding, assisting and abetting, or for the purpose and with the intent of aiding, assisting and abetting, if necessary, such other person in the killing of said deceased.''

These instructions fully covered the law invoked by the defendant in his refused instruction, and therefore no error was committed in refusing said instruction. The instructions submitted to the jury by the court fully covered every phase of the law arising upon the evidence. These instructions submitted to the jury the question of the defendant's guilt of murder in the first degree, murder in the second degree, and manslaughter in the fourth degree, and were exceedingly liberal to the defendant, and left him no ground of complaint. The court also instructed on the presumption of innocence, the burden of proof and reasonable doubt, and also the right of self-defense and alibi. Upon the whole record we find no error committed by the court in the trial of this case and the judgment must be and is affirmed.

IV. As in a number of other cases argued and submitted at this term, the Attorney-General filed a motion to dismiss the appeal because the appellant failed to file an affidavit for an appeal, but for the reasons given in State v. Graham Smith, 190 Mo. 706, we hold that motion was not well taken, because the statute (sec. 2696, R. S. 1899), does not require as a condition precedent to an appeal by defendant in a criminal case the filing of an affidavit for an appeal. All that is required is that he shall pray for an appeal during the term of the court at which he is convicted, and nowhere in our criminal code is his prayer for an appeal required to be in the form of an affidavit such as is prescribed in civil causes.

Accordingly, we have considered the appeal of the defendant in this case, and for the reasons already given the judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.