THE STATE v. WALTER GIESEKE, Appellant.

Division Two, February 18, 1908.

1. INDICTMENT: Preliminary Examination. The fact that the circuit attorney had filed an information in the court of criminal correction, charging the defendant with murder in the first degree, was no bar to the finding of an indictment by the grand jury, charging him with the same offense, while said preliminary examination was yet under way. The Act of 1905 (Laws 1905, p. 132) does not apply to an indictment, or to such a case.

2. ———: ———: Bar. The grand jury may investigate and indict one charged with a felony although he has been arrested and is held for a preliminary examination, and is not bound to await the action of the examining court.

3. ———: ———: Procedure First Instituted. Section 2476, Revised Statutes 1899, providing that "that mode of procedure which shall be first instituted by the filing of an indictment or information for any offense shall be pursued to the exclusion of

the other," etc., has reference only to informations filed in the circuit or criminal courts, and not to those filed before a justice of the peace or any other like court in which an examination is held merely for the purpose of binding the defendant over on bail, etc.

4. ————: Plea in Abatement: No New Arraignment. A plea in abatement and a motion to quash the indictment, filed after arraignment and a plea of not guilty entered, do not have the effect of withdrawing the plea of not guilty, and defendant is triable after an overruling of the motion, without a new arraignment or another plea of not guilty.

5. HOMICIDE: Provocation: Just Cause. Instead of using the words "just cause or provocation" the instruction should tell the jury that "no words of abuse or vile names, however calculated to excite indignation or anger, would constitute a lawful and reasonable provocation;" but when the whole instruction obviously means that no words of abuse or vile names were sufficient to reduce the homicide from murder to manslaughter, it is not erroneous, simply because it unhappily uses the words "just cause or provocation" instead of "lawful and reasonable provocation." The case of State v. Grugin, 147 Mo. 39, is no authority for a legal distinction between "just cause" and "reasonable and lawful provocation," nor does it overrule the long and unbroken line of authority to the effect that mere words of reproach, however degrading, will not of themselves constitute such a lawful provocation as to reduce a killing from murder to manslaughter.

6. ————: Self-Defense: Instruction. To a full and favorable instruction on self-defense, the court added these words: "Words and epithets, however vile and grievous, will not justify an assault, and if you believe from the evidence that the defendant sought or brought on a difficulty with the said Charles Schaefer with the intent to kill him or do him some great bodily harm, then the defendant cannot justify the killing of said Schaefer on the plea of self-defense." Held, that the words "with intent to kill him or do him some great bodily harm" modify the words "sought or brought on a difficulty," etc., and the instruction is correct, and in no sense in conflict with prior rulings of this court.

7. ————: Heat of Passion. The instructions in this case correctly define "heat of passion."

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED.

*Joseph McCoy, John B. Denvir, Jr.,* and *S. S. Bass* for appellant.

(1) It has been declared again and again, and it is one of the well-settled principles of the law of homicide in this State, as well as elsewhere, that "grievous and degrading words of reproach would amount to 'just provocation' as contradistinguished from lawful and reasonable provocation," and consequently what words of reproach and attendant circumstances will be deemed a just cause of provocation, and constitute the homicide murder in the second degree, is in every case a question of law for the court; and whether the state of mind necessary to make the killing the lowest grade of murder was superinduced by such just provocation, is a question of fact for the jury. Here the jury were told that words would not constitute just cause or provocation on part of defendant, when the only question that the jury was to determine was whether if the words had been used they caused such state of mind as to reduce to a lower grade of murder. State v. Grugin, 147 Mo. 39; State v. Ellis, 74 Mo. 207. (2) It is not true as a matter of law that one loses the right of the plea of self-defense if he sought or brought on a difficulty, as the instruction declares. One may enter or bring on a difficulty, and be entitled to defend himself on the plea of self-defense, or he may be guilty of manslaughter. State v. Patterson, 159 Mo. 560; State v. Goddard, 146 Mo. 177; State v. Rapp, 142 Mo. 443; State v. Addler, 146 Mo. 18; State v. Vaughan, 144 Mo. 514; State v. Lewis, 118 Mo. 84. The court in the trial of this case entirely overlooked the principle laid down by this court in the case of State v. Partlow, 90 Mo. 608. (3) The trial court committed prejudicial error in failing to define "heat of passion." State v. Strong, 153 Mo. 548; State v. Skaggs, 159 Mo. 581.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)   Defendant was not entitled to a preliminary examination, as a matter of right; but said preliminary examination is ''a mere expedient to prevent the suspected person from escaping, or for preserving the evidence or keeping the witnesses within control.'' 1 Bishop's Crim. Pro. (3 Ed.), sec. 239a; State v. Brooks, 92 Mo. 571.   (2)   Defendant did not withdraw his plea of not guilty at the time he filed his plea in abatement and motion to quash, or at any other time, hence this matter has been waived.   (3)   The instructions given are full and fair, and exceedingly liberal towards defendant. The ''rough words'' said to have been used by deceased were not sufficient to reduce the offense down to the crime of manslaughter.   State v. Ballance, 207 Mo. 607.   (4)   No error was committed in giving the State's instruction on the subject of the defendant entering into the difficulty with a felonious intent, as said instruction, even in a broader form, has been approved.   State v. Bailey, 190 Mo. 257.

GANTT, J.—On February 5, 1906, the grand jury of the city of St. Louis returned an indictment against the defendant charging him with murder in the first degree.   At the January term, 1907, the defendant was tried and convicted of murder in the second degree and his punishment assessed at ten years' imprisonment in the penitentiary.   His motions for new trial and in arrest of judgment were heard and overruled, and the defendant appeals.

The State's evidence tended to prove that the defendant was a butcher by occupation and lived in the city of St. Louis. The deceased, Charles Schaefer, and his wife occupied rooms in the second story of an apartment house in said city.   The mother of the defendant had done some sewing for the wife of the deceased,

and had been delayed in the collection of her account for the same, which amounted to $1.20. About seven o'clock on the evening of November 8, 1905, the defendant, his mother and a younger brother called at the home of the deceased and found him and his wife eating supper. After asking for the money due the mother of the defendant, the wife of the deceased said she was poor and could not pay it all at once, but desired to be allowed to pay it in two or three payments. This was not satisfactory to the defendant's mother and some words were exchanged between the parties. The deceased told his wife to push defendant's mother down the stairs and ordered the defendant to leave the place. About that time the defendant drew his pistol upon the deceased, and the latter left the house, saying he was going to get a policeman to arrest the defendant, and walked through a nearby saloon. The defendant waited on the porch of the house of the deceased for awhile, and when asked by the deceased's wife if he intended to shoot her husband replied, ''It is none of your d— business.'' After sitting on the porch for sometime with his pistol in his hand, the defendant got up and went into the same saloon through which the deceased had gone, and took two or three drinks of liquor. The deceased had inquired for a policeman in the saloon, and had gone out of another door. The defendant stated to a man in the saloon that he had had trouble with the man upstairs trying to collect for some clothing that his mother had sewed for them; that his younger brother had been there to collect the bill and the deceased had threatened to throw him and his mother down the stairs if either of them ever came there again; that he would not stand for that, and he was going to get even with that man. Defendant then took his pistol out of one pocket and put it into another pocket and walked out of the saloon. In a few minutes the deceased returned to his porch, saying he could not

find a policeman, and the defendant said, ''I have got you, you son of a b—.'' The deceased tried to grab the defendant's pistol and the defendant fired twice at the deceased, but missed him, the struggle after the pistol was fired continued, and the defendant backed down the stairs out into the yard where he fired three more shots, the third shot taking effect in the body of the deceased. The deceased then went into his room, an ambulance was sent for and he was taken to the City Hospital where he died two days later. The defendant, after the shooting, returned to the saloon, took out his pistol and laid it on the bar saying: ''I got my man.'' After taking another drink the defendant stepped out on the sidewalk where two policemen arrested him. A post-mortem examination was held on the body of the deceased and the physicians testified that the deceased's death was the result of a gun-shot wound, which entered the abdomen two and one-half inches to the left, and about one inch and a half above the navel. The bullet went straight through the body of the deceased.

On the part of the defendant the evidence discloses that he was twenty-four years old and lived with his mother and brother; that he was engaged in business at 1430 Bremen avenue in St. Louis; that he went from his place of business with his mother and brother on the evening of the homicide, to the residence of the deceased; that he carried a revolver with him because he had the receipts of his day's business, amounting to between sixty-five and seventy-five dollars, with him at the time; that defendant, his mother and brother went into the room occupied by the deceased and his wife at the invitation of the deceased and presented the bill for the sewing; that an argument arose and the defendant and his mother were ordered out of the place; that the deceased pushed both of them out, took hold of defendant's mother, called her names and tried

to push her over the banisters; that defendant objected and deceased went into the room and got a knife with a blade about ten inches long; that defendant then drew his revolver and told the deceased to lay down the knife, which deceased did, and then defendant put up his revolver; that deceased then said he was going to get a policeman, and went out for one; that the defendant in a short time did the same thing; that the deceased came back first and waited for the defendant at the foot of the stairs leading to deceased's room; that the defendant came back, approached the said stairs and called to his mother; that the deceased who had returned in the meantime was concealed from the defendant by the corner of the porch; that as defendant came near the deceased, the deceased began striking him on the head and struck him some fifteen times and knocked him to the ground; that they had then gone back about twenty-five feet from the place where the deceased first struck defendant. The deceased had defendant down and was beating and choking him and defendant drew his revolver and shot the deceased; that the defendant was so stunned that he could not get up for some minutes, but presently got up and walked into the saloon and gave his pistol to one of the men, and waited until the policemen came and arrested him. There was also some evidence to prove that the defendant's general reputation for peacefulness and good order was good.

The evidence on the part of the State in rebuttal tended to prove that there were no wounds or bruises on the defendant's head and neck at the time that he came into the saloon after the shooting, nor the next morning at the police station. There was also evidence that the deceased did not have a knife at the time of the difficulty in the room as testified to by the defendant's witnesses.

The indictment in this case is sufficient both in form and substance and such as has been approved by this court In Banc in State v. Wilson, 172 Mo. 420, and State v. Gray, 172 Mo. 430, and it is unnecessary to set it out at length in this opinion.

The grounds upon which a reversal is sought will be considered in the order of defendant's brief in this court.

I.  It is urged that the defendant's plea in abatement was erroneously overruled.  This plea in substance was to the effect that prior to the preparing of the indictment herein by the grand jury, an information had been filed in the St. Louis Court of Criminal Correction by the assistant prosecuting attorney of said court charging the defendant herein with murder in the first degree, and that said court had authority by law to make a preliminary examination of all charges of felony, whether capital or otherwise, committed in the city of St. Louis, and that before said charge was heard and disposed of before the defendant had had his preliminary examination, the circuit attorney of St. Louis had caused the said charge to be heard before the grand jury and the indictment herein had been preferred and the preliminary proceedings in the St. Louis Court of Criminal Correction dismissed, in consequence of which the defendant had been denied a preliminary examination in said St. Louis Court of Criminal Correction.  This insistence is predicated upon the act of the Legislature of this State passed and approved in 1905 (Laws 1905, p. 132, to be known as Sec. 2476a, R. S. 1899), which provides: "No prosecuting or circuit attorney in this State shall file any information charging any person or persons with any capital offense until such person or persons shall first have been accorded the right to a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed."  Counsel

for defendant urge that the word "information" in said section should be read "indictment." It is plain that this is a clear misapprehension of the purpose of that act. The Legislature had in mind, we think, to differentiate between an indictment found by a grand jury after an investigation of the charge with the witnesses before it, and the act of the prosecuting or circuit attorney filing an information charging an accused with a capital offense without the prisoner or accused having had the benefit of an examination of the facts by a grand jury, and intended, in the latter case, to accord the accused the security of a preliminary examination before he should be charged by information for a capital offense. It is a well-established law of this State that the grand jury may investigate and indict one charged with a felony although he has been arrested and held for a preliminary examination, and is not bound to await the action of the examining court, for the reason that the action of the examining court is no bar to the right of the grand jury to inquire into the case and indict the accused even though he has been discharged on the preliminary examination. [State v. Whalen, 148 Mo. 286.] The plea in abatement was properly overruled, as the Act of 1905, upon which it is based, has no reference whatever to indictments preferred by a grand jury.

Counsel cite us, however, to section 2476, Revised Statutes 1899, which provides: "But that mode of procedure which shall be first instituted by the filing of the indictment or information for any offense shall be pursued to the exclusion of the other, so long as the same shall be pending and undetermined; and the court in which the prosecution shall be first commenced by the filing therein of the indictment or information, and the issuing of a warrant thereon, shall retain jurisdiction and control of the cause to the exclusion of any other court so long as the same shall be pending and

undisposed of.'' This section has reference only to informations filed in the circuit or criminal courts, which have jurisdiction to hear and determine the guilt or innocence of·an accused, and not to informations filed before the justice of the peace or before the St. Louis Court of Criminal Correction, merely for the purpose of binding the defendant over on bail or committing him to jail to await the action of a grand jury or the filing of an information in the circuit or criminal court by the prosecuting or circuit attorney. So that the St. Louis Court of Criminal Correction had no power to retain the case before it for preliminary examina tion of the defendant after the grand jury had preferred the indictment in this case.

II.   The record discloses that the defendant was duly arraigned and entered his plea of not guilty to the indictment at the January term, 1906, and that afterwards at the December term, 1906, he filed a plea in abatement and a motion to quash the indictment, which has just been considered and which the court adjudged insufficient, thereupon, the cause proceeded to trial. It is now urged that the sentence of the circuit court must be reversed because there was no new arraignment of the defendant after his plea in abatement and his motion to quash had been overruled. This objection is made for the first time in this court; it was not made a ground for a new trial or in arrest of judgment in the circuit court. The learned counsel for the defendant have cited us to no authority in support of their contention. The record does not state that the defendant withdrew his plea of not guilty by consent of the court when he filed his motion to quash and his plea in abatement, nor was it in fact withdrawn. And this court, in State v. Reeves, 97 Mo. 668, specifically held that a motion to quash the indictment, though filed with the consent of the court and after a plea of not guilty entered, but not withdrawn, did not have the

effect of withdrawing that plea. A motion to quash is in the nature of a demurrer, which certainly occupies no higher plane; and at common law a defendant in a prosecution for a felony might at one and the same time enter his plea of not guilty to the indictment and his demurrer to the sufficiency thereof and if his demurrer were overruled, he would be triable upon his plea of not guilty just as if no demurrer had been interposed, and this was true of a plea in abatement interposed at the same time with a plea of not guilty. [1 Chitty's Crim. Law, 435, 440; 2 Hawkin's P. C., chap. 23, sec. 1281, chap. 3, sec. 6; 1 Bishop's Crim. Proc., sec. 762; see, also, State v. Meagher, 49 Mo. App. 571; Baker v. State (Wis.), 59 N. W. l. c. 572. We think the point is without authority or merit.

III. The third assignment of error is that the motion to quash ought to have been sustained because no preliminary examination had been allowed the defendant before the indictment was preferred and that without such examination the circuit court had no jurisdiction. We have already disposed of this contention in answer to the first assignment of error.

IV. The instruction of the court, in the following words, is assailed as erroneous: "The jury are further instructed that no words of abuse or vile names, however calculated to excite indignation or anger, are sufficient to reduce the crime of killing to a lower degree than murder, and the use by the deceased of such words, or the calling of such names by him (if you find from the evidence that he did use such words or call such names), would not constitute just cause or provocation on the part of the defendant to use a deadly weapon upon the deceased. The provocation which would reduce the crime of killing to a lower degree than murder must consist of personal violence to the defendant, or the danger of such personal violence must

have been apparent and imminent, or must have appeared to the defendant to be apparent and imminent at the time he shot and killed the deceased, before the defendant can claim in this case that he had just cause or provocation to use upon the deceased a deadly weapon, such as was used by the defendant in this case. On the other hand, if you find and believe from the evidence that the deceased struck the defendant with his fist with force and violence, or assaulted the defendant in any other manner before the defendant shot the deceased, then such violence or such assault would constitute in law just cause or provocation which would reduce the crime below the degree of murder, and if you find that the defendant was assaulted by the deceased or received personal violence at the hands of the deceased before the defendant dischargd his pistol at the deceased, and thereupon, while in the heat of passion, caused by such assault or by such personal violence, he, the defendant, shot and killed the deceased, then and in that event, you should convict the defendant of manslaughter in the fourth degree, unless, under other instructions given you, you acquit the defendant on the grounds of self-defense.''

The criticism of this instruction is that ''grievous and degrading words of reproach will amount to just provocation as contradistinguished from lawful and reasonable provocation.'' Counsel say, ''We understand the law to be that it is not only personal violence that entitles a defendant to claim that he has just cause or provocation, which would reduce the crime of killing to a lower degree than murder,'' and cite us to State v. Grugin, 147 Mo. 39. We think that the court was unfortunate in the use of the word ''just'' in the first paragraph of the instruction, ''just cause'' instead of ''reasonable or lawful,'' but when the whole instruction is read together, it is obvious that it was intended to say, and did direct the jury properly, that no words

of abuse or vile names were sufficient to reduce the crime of killing to a lower degree than murder, and that in order to reduce the crime of killing to manslaughter, the provocation must have consisted of personal violence to the defendant, or the danger of such personal violence must have been so apparent and imminent, or must have appeared to the defendant to be so apparent and imminent at the time of the shooting and killing the deceased, before they could find him guilty of manslaughter. If the learned circuit court had used the word "lawful and reasonable" in describing the provocation instead of "just cause or provocation" the instruction would have been absolutely and technically correct, but when the whole instruction is read together, it is plain that the court properly told the jury that mere words of reproach or abuse or vile names would not alone be sufficient provocation to reduce the killing from murder to manslaughter. [State v. Ballance, 207 Mo. 607; State v. Gartrell, 171 Mo. l. c. 515, 518, inclusive; State v. Bailey, 190 Mo. l. c. 291; State v. Gordon, 191 Mo. l. c. 125; State v. Todd, 194 Mo. l. c. 396; State v. McKenzie, 177 Mo. l. c. 712; State v. Kelleher, 201 Mo. l. c. 631; State v. Edwards, 203 Mo. l. c. 543.] Our conclusion on this point is that taking the instruction all together, upon this proposition the court properly instructed the jury that mere words of reproach or vile names would not constitute such lawful or reasonable provocation as would reduce the crime from murder to manslaughter, although the use of the word "just" was unfortunate and unhappy. What was said in State v. Grugin, 147 Mo. 39, applied to the peculiar facts of that case, as since explained by this court, and is in no manner to be construed as overruling the long and unbroken line of authority in this State to the effect that mere words of reproach, however degrading, will not of themselves constitute such

a lawful provocation as to reduce a killing from murder to manslaughter.

V.  In the course of its instruction on self-defense, after a very full and favorable instruction for the defendant on the law of self-defense, the court added these words: "Words and epithets, however vile and grievous, will not justify an assault, and if you believe from the evidence that the defendant sought or brought on a difficulty with the said Charles Schaefer with the intent to kill him or do him some great bodily harm, then the defendant cannot justify the killing of said Schaefer on the plea of self-defense."  And this is assigned as error.

Counsel cite us to the decisions of this court in State v. Patterson, 159 Mo. l. c. 560; State v. Goddard, 146 Mo. 177; State v. Hopper, 142 Mo. 478; State v. Partlow, 90 Mo. 608, but the reading of each one of those cases will show that the trial court in its instruction omitted the words found in the instruction herein: "with the intent to kill him or do him some great bodily harm," and therein lies the difference between those instructions and the one at bar.

This character of instruction came under review in the case of State v. Bailey, 190 Mo. l. c. 286, 287, wherein it was said that this expression "with intention of killing or inflicting upon him some great bodily injury" modified the phrases, "voluntarily brought on the difficulty, and voluntarily entering into the difficulty," and when thus read and understood, it in no manner conflicts with the rule announced in State v. Partlow, 90 Mo. 608, or State v. Herrell, 97 Mo. 105, but simply announces the sound and wholesome law that if one brings on a difficulty with the purpose of wreaking his malice by slaying his adversary or doing him some great bodily harm and actuated by such a felonious purpose does the homicidal act, then there is no self-defense in the case.  See, also, State v. Sharp,

183 Mo. l. c. 738, 739; State v. Pennington, 146 Mo. l. c. 35, 36, in which State v. Rapp, 142 Mo. 443, was distinguished.

That there was ample evidence tending to prove that the defendant armed himself with the deadly weapon and went back to the residence of the deceased and sought the difficulty with him with intent to kill or do him some great bodily harm, we think is not a debatable question.

VI.   Finally, it is insisted that the court committed error in defining the expression "heat of passion," but this is a misapprehension of the instructions. In the fourth instruction the court told the jury that manslaughter in the fourth degree was the intentional killing of a human being without malice and in the heat of passion, and then instructed the jury that if the defendant intentionally shot and wounded the deceased, Schaefer, with a pistol charged with gunpowder and a leaden bullet and that at the time of such shooting and wounding of the deceased, the defendant was so far under the influence of a passion suddenly aroused by being struck or assaulted by the deceased, before the defendant shot the deceased, as to render the defendant incapable of thinking coolly of the natural consequences of his act, they should convict him of manslaughter in the fourth degree. And the jury were instructed that it was a passion resulting from the provocation, and not the provocation itself, which reduced the grade of the offense from murder to manslaughter. This was all that was necessary for the court to do, and fully answers the objection of the counsel to this instruction.   In our opinion, the defendant had a fair and impartial trial and there is no reversible error in the record.

The judgment is accordingly affirmed.   *Fox, P. J.,* and *Burgess, J.,* concur.