## UNITED STATES v. AVERETT et al.

District Court, W. D. Virginia. June 8, 1928.

1. **Bail ⬅⬆52—$5,000 bail for each of four defendants charged with joint theft of $27,000 held not excessive (Cr. Code, § 194 [18 USCA § 317]).**

$5,000 bail for each of four defendants charged under Criminal Code, § 194 (18 USCA § 317), with a joint theft of $27,000 in money from a mail pouch, *held* not excessive.

2. **Bail ⬅⬆53—For purpose of determining motion to reduce bail, defendants, after finding indictment, would be presumed as probably guilty.**

Where, after fixing amount of bail of defendants, indictment has been found making the same charges as set out in warrant originally issued by commissioner, it would be assumed, for purpose of determining motion to reduce bail, that defendants are probably guilty.

3. **Criminal law ⬅⬆224—Defendant, after regularly found indictment, has no absolute right to preliminary examination.**

After regularly found indictment, defendant has no absolute right to preliminary examination, in cases where there is no reason for any examination in order to fix penalty of the bail bond.

4. **Criminal law ⬅⬆224—Defendants held not entitled to preliminary examination for purpose of ascertaining in advance government's evidence.**

Defendants in criminal prosecution are not entitled to preliminary examination for purpose of ascertaining in advance of trial government's evidence; indictment giving them nature and character of crime charged, with right to bill of particulars, if not supplying sufficient details.

Prosecution by the United States against Roland Averett and others. On defendants' motions to reduce bail and for preliminary examination. Motions overruled.

Joseph C. Shaffer, U. S. Atty., of Roanoke, Va., and C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va.

Carter & Talbott, Hugh T. Williams, Marvin I. Walton, and J. C. Carter, all of Danville, Va., for defendants.

McDOWELL, District Judge. The four defendants, negroes heretofore employed by the Southern Railway Company at its railroad station in Danville, Va., were arrested by Danville police officers on March 15, 1928. Shortly thereafter a warrant was issued by the United States commissioner in Danville, charging the defendants (under section 194, Criminal Code [18 USCA § 317]) with a joint theft of $27,000 in money from a mail pouch. The commissioner at first designated March 19th for a preliminary examination, and at that time apparently fixed bail at $5,000 for each defendant. On the 19th, on the defendants' motion, the examination was postponed until March 21st. On that date, on the motion of government counsel, the examination was postponed until April 24th. On April 9th, an indictment was returned by the grand jury of this court at Abingdon, making the same charge that was set out in the warrant. This case was presented to the grand jury by the district attorney on the testimony of witnesses. The case was by order entered at Abingdon transferred to Danville for trial. Since the indictment the commissioner has not held or attempted to hold a preliminary examination. The first opportunity for a trial of this case at Danville will not arrive until September 10, 1928. The defendants do not desire that the trial be held elsewhere than at Danville.

On May 21st notice was given by counsel for the defendants that on May 28th motions that a preliminary examination be ordered and that the penalty in the bail bonds be reduced would be made. These motions were made, were resisted by the government, and must now be disposed of.

### (A) The Motion to Reduce Bail.

[1] The four defendants were charged before Commissioner Barksdale with the joint theft of $27,000 in money. If no part of the stolen money had been recovered at the time he fixed the bail of each defendant at $5,000, he manifestly made the bail too small. The presence of the defendants at a trial in court was not adequately insured by requiring bail, in a sum $7,000 less than the sum alleged to have been stolen. The defendants, if guilty, were allowed an opportunity to indemnify sureties with a part of the stolen money and then to flee, which should not have been allowed.

[2] Since then the indictment has been found. This fact makes it necessary that I assume for present purposes that the defendants are probably guilty. I understand that some part of the money has been recovered, but not enough of it to make the bail unduly high, even if high enough. I have no hesitation in overruling the motion to hold, or to have held, a preliminary examination for the purpose of again fixing the penalty of the bail bonds.

### (B) The Motion for a Preliminary Examination.

(1) The first question is whether or not defendants, who have been regularly indicted at the instance of the United States attorney without a previous preliminary examination, have an absolute right to such an examina-

tion, if applied for in advance of the trial by jury. It is not contended that any statute applicable to this case gives such right to the defendants. As a matter of common law, the only authority that I know of in support of the defendants' position is the following from Hughes' Fed. Proc. (1st Ed.) p. 29: "The preliminary examination is a valuable right, and the prisoner can have it, either on prosecutions instituted by complaint or indictment."

The only decision cited as supporting this sweeping statement is U. S. v. Farrington (D. C.) 5 F. 343. In the Farrington Case there was no motion before the court to order a preliminary examination after an indictment. What was before the court was a motion to quash two indictments which had been irregularly and improperly obtained.

In Goldsby v. U. S., 160 U. S. 70, 73, 16 S. Ct. 216, 218 (40 L. Ed. 343) on writ of error from a conviction for murder, it is said: "The contention at bar that, because there had been no preliminary examination of the accused, he was thereby deprived of his constitutional guarantee to be confronted by the witnesses, by mere statement demonstrates its error."

It may be possible that the reason for the foregoing statement was the thought that the defendant, by failing to move for a preliminary examination after indictment and before trial, had waived his right to such examination. And yet it seems improbable that Chief Justice White, in the case of a plaintiff in error under conviction of murder, would have so expressed himself as to leave the impression that the alleged right had never existed, if the reason for the ruling was that a right which had existed had been waived.

In U. S. v. Fuers, Fed. Cas. No. 15174, in U. S. v. Ronzone, Fed. Cas. No. 16192, and in Roth v. U. S. (C. C. A.) 294 F. 475, 478, the objection was presented by motion to quash. In U. S. v. Kerr (D. C.) 159 F. 185, the objection was made by motions for arrest and for new trial. In each case the ruling was against the defendant, and in no one of these cases is there any indication that the ruling was based on waiver.

In the Kerr Case (D. C.) 159 F. 185, 186, it is said: "Whatever may be said concerning the power of a grand jury in the Pennsylvania courts to find an indictment, where the accused has not had a previous hearing before a magistrate, it is clear that no such hearing is necessary in the federal courts. No doubt a prosecution before these tribunals is ordinarily begun in much the same way as in the criminal courts of the state. Information is laid before a commissioner, who hears the government's case and thereupon either discharges the accused or holds him to answer; but this preliminary examination is not essential, as the federal authorities abundantly show. If the grand jury sees proper to act upon evidence that is brought to their attention, they may bring in a suitable indictment, although the charge is made for the first time by their finding, and although the accused has had no preliminary hearing."

In the Roth Case (C. C. A.) 294 F. 475, 478, it is said: "Defendant was first arrested on warrant issued by a United States commissioner; defendant thereupon demanding a preliminary examination and giving bond for appearance thereon. Before the date to which the commissioner's proceeding was adjourned, the indictment here was found by the grand jury, without preliminary action by or hearing before a commissioner. We think the court rightly overruled defendant's motion to quash the indictment because of the facts stated. Defendant could not be held for trial without indictment by grand jury, which had the right to consider the alleged offense and make presentment thereon, notwithstanding the pendency of proceedings before a commissioner, and even if other indictments were pending for the same cause, or even if an indictment had previously been refused."

In U. S. v. Kilpatrick (D. C. N. C.) 16 F. 765, 770, 771, on a motion to quash an indictment, it is said: "The district attorney, according to the usual practice, may, on his official responsibility, send a bill to a grand jury without a prior arrest and binding over; but he should exercise this power cautiously, and never so act unless convinced that the exigencies of the occasion or the general public good demand it. If he has any doubts as to the propriety of such action he should consult the court."

See, also, U. S. v. Morgan, 222 U. S. 274, 282, 32 S. Ct. 81, 82 (56 L. Ed. 198), holding grand jurors to be "the chosen instruments of the law to protect the citizen against unfounded prosecutions."

The case of U. S. v. Wuerstle (D. C.) 13 F.(2d) 952, 953, is not in point. The proceeding was before an indictment had been found or an information filed. The language of the court is a repetition of the words of the Act of August 18, 1894 (28 Stats. 416, U. S. Comp. Stats. § 1678 [18 USCA § 595]) which relates to the duty of the federal arresting officer on making an arrest.

In Dobie, Fed. Proc. p. 63, it is said: "After indictment, it seems fairly clear that there is no right to such a preliminary hearing. The formalities· and safeguards surrounding the action of the grand jury seem to afford, in themselves, sufficient guaranties to constitute due process and to satisfy the early constitutional amendments."

In 12 Standard Ency. of Procedure, 90, it is said: "The general rule is that a preliminary examination and commitment prior to the finding of an indictment is unnecessary, unless specially required by statute or the practice of the particular jurisdiction."

In 16 C. J., 315, it is said: "As a general rule, no preliminary examination of accused is necessary where an indictment has been found against him by a grand jury. Sometimes, however, a statute or the practice requires a preliminary examination and a commitment or binding over to authorize an indictment in a particular court or under particular circumstances."

See, also, 16 Ency. Pl. & Pr. 825; Rose, Fed. Juris. (3d Ed.) §§ 121, 122; Zoline, Fed. Crim. Law (1921) § 65; 3 Foster, Fed. Pr. (6th Ed.) p. 2578; 1 Bishop, Crim. Proc. (4th Ed.) § 239a.

In State v. Pichon (1921) 148 La. 348, 86 So. 893, affidavits charging the defendants. with murder had been made, and the matter was fixed for preliminary examination in the respondent judge's court on the 9th of the month, and on the motion of the district attorney was subsequently postponed indefinitely. A formal motion, filed by the accused, that a day be fixed for the preliminary examination, was denied.· On the 12th the accused applied to the Supreme Court of Louisiana for a writ of mandamus. On the 17th, while the application for mandamus was pending, an indictment was found, and a few days thereafter the charge before the respondent judge was dismissed. The opinion reads in part: "After indictment found in a capital case, the accused is no longer entitled to have a preliminary examination held for the purpose of bail or release, though, no ,doubt, under special circumstances, a district judge might, in his discretion, require such an examination to be held for the purpose of bail."

In State v. Mates (1913) 133 La. 714, 63 So. 294, the defendant immediately after arrest, which was made after an information filed, applied to the district judge for a preliminary examination. This was refused, and the defendant obtained a mandamus. On the hearing it appeared that the defendant could not give bail in any sum, and seemingly her sole purpose in seeking a preliminary examination was to learn the evidence for the state. The mandamus was dismissed.

In Blaney v. State (1891) 74 Md. 153, 21 A. p. 547, the grand jury indicted the defendant without a previous examining trial before a committing magistrate. He raised the point by a plea in abatement to the indictment. The trial court overruled the plea, and the Court óf Appeals of Maryland affirmed the judgment of the trial court. Also in State v. Jeffries (Mo. Sup. 1908) 109 S. W. 614, 619, 620, and in State v. Gieseke (1908) 209 Mo. 331, 108 S. W. 525, 526, the objection that the defendant had not had a preliminary examination was raised by plea in abatement. But the pleas were held bad.

In State v. Rozum (1899) 8 N. D. 548,, 80 N. W. 477, the objection was raised by motion to quash an information, but unsuccessfully. In State v. Gottlieb (1910) 21 N. D. 179, 129 N. W. 461, the defendant made a motion that he be allowed a preliminary examination, which was denied, and the ruling was affirmed. When the motion was made does not appear. In State v. Solomon (1914) 158 Wis. 146, 147 N. W. 640, 641, 148 N. W. 1095, Ann. Cas. 1916E, 309, the defendant demanded a preliminary examination before he was put on trial. This was refused. He then objected to the jurisdiction on the ground that he had not had a preliminary examination, which was overruled, and he then filed a plea in abatement on the same ground. The trial court ruled against the defendant and was affirmed.

Without making an effort to exhaust the authorities presently available, it seems quite clear that the weight of authority is against the contention of the defendants.

[3] Aside from authority and as a matter of reason, I cannot think that, after a regularly found indictment, the defendant has an absolute right to a· preliminary examination, in cases in which there is no reason for any examination in order to fix the penalty of the bail bond. In such cases the legitimate objects of the preliminary examination have been accomplished, and by a tribunal of superior rank to that of an examining magistrate. When a grand jury in due course indicts, it finds that there is probable cause to believe that the crime charged has been committed and that the defendant committed it. After an indictment, except for the purpose of fixing bail, what an examining magistrate thinks as to the probable guilt of the defendant is of absolutely no importance.

(2) I think it unnecessary to decide whether or not the court has a discretionary

power generally to order a preliminary examination, on motion of the defendant, and over the objection of the government, after a regularly found indictment, where there is no reason for changing the penalty in the bail bond. I so say because in this particular case I am constrained to overrule the motion, even if it be assumed that the court has a discretionary power to grant it.

Unless defendants, who have been indicted without a previous preliminary examination, have a right to know in advance of trial the government's evidence, there could be no sufficient reason for granting the motion in this case. In 16 C. J., 313, it is said: "The purposes of a preliminary examination may be said to be threefold: (1) To inquire concerning the commission of crime and the connection of accused with it, in order that he may be informed *of the nature and character of the crime charged* against him, and, if there is probable cause for believing him guilty, that the state may take the necessary steps to bring him to trial; (2) to preserve the evidence and keep the witnesses within the control of the state; and (3) to determine the amount of bail." To the same effect, see 8 R. C. L. p. 104; 21 Standard Proc. 495, 496.

[4] If there is anywhere authority for the statement that it is a purpose of the preliminary examination to inform the defendant of the evidence relied on by the prosecution, I have not encountered it. In very serious criminal cases the temptation to the defendant to make use of false evidence is theoretically, and in fact usually, much greater than in civil cases. And yet even in civil cases the rule is, I believe, universal that the bill of particulars need not disclose the plaintiff's evidence, and that the grounds of defense need not disclose the defendant's evidence. The degree of civilization so far attained in this country has not yet approached the point where it would be judicious to require that the evidence in support of every prosecution must be made known to the defendant in advance of trial. In this case the indictment gives the defendants "the nature and character of the crime" charged against them, and, if the indictment does not supply sufficient details, the defendants have a right to a bill of particulars. It follows that, if further information such as the law authorizes is wanted, a motion for a bill of particulars is the proper proceeding, and not a motion for a preliminary examination.

The facts of this case might possibly suggest the thought that government counsel have intended to unjustly oppress the defendants, and also that the court has, by transferring the case to Danville, caused unjustifiable delay. Neither inference is justified. Government counsel have believed that hope of a successful search for the unrecovered portion of the stolen money would be frustrated, if the defendants were informed of the circumstances which led to the recovery of that part of the money that has been found. They also believe that it would be injudicious and injurious to the interests of the government for other reasons to permit the defendants to have, in advance of trial, knowledge of the evidence on which the government relies. It is also a fact that the defendants have from the first desired that the trial, when held, be held at Danville, and I so understood when the indictment was returned at Abingdon. In ordering the case to be transferred from Abingdon to Danville for trial, I did what is usually done in such cases, and what I then thought and now understand the defendants desired.

The motions of the defendants must be overruled.