**STATE of Missouri, Respondent,**

**v.**

**Arthur R. AUBUCHON, Appellant.**

**No. 50619.**

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

**330**

Norman H. Anderson, Atty. Gen., Jefferson City, Ben Ely, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Charles M. Shaw and Claude Hanks, Clayton, for appellant.

HIGGINS, Commissioner.

Arthur R. Aubuchon, indicted for the crime of murder in the first degree of Dennis Sass, was convicted of murder, second degree, and the jury fixed his punishment at seventy-five years' imprisonment. Section 559.030 RSMo 1959, V.A.M.S. Sentence and judgment followed and defendant has appealed. He has filed no brief so we review assignments of error properly preserved in the motion for new trial. State v. Kukovich, Mo., 380 S.W.2d 324, 325[1]. Our statement will be brief because it is not contended that the evidence was insufficient to sustain the conviction.

Appellant began to see Esther Mills socially in August, 1962, and he and Mrs. Mills were to be married after she became divorced. For some three months prior to March 5, 1963, Mrs. Mills lived in a home in Glasgow Village, St. Louis County, Missouri, upon which appellant paid the rent. In February, 1963, Mrs. Mills quit dating appellant and began to see Dennis E. Sass. Appellant thereafter threatened Sass's life on three different occasions and, on still another occasion, went to Sass's place of employment, attacked him, and told him to stop seeing Mrs. Mills.

On March 4, 1963, appellant obtained a 38-caliber Smith & Wesson Chief Special revolver from the New Line Gun Company in St. Louis. During the bargaining, appellant stated that he wanted the gun right away. On that evening appellant visited several taverns and then drove to the Mills home in Glasgow Village where, at about 1:00 A.M., March 5, he found Sass sitting in Mrs. Mills's Buick automobile. Appellant ran from his car to the Buick, opened the door, and shot Sass. Appellant got back in his car, drove a short distance, turned around, and returned to the scene of the shooting. Sass was then slumped over and Mrs. Mills had come from the house and was standing by her car. Appellant then shot her and she fell to the ground beside the car. The two shootings were three to five minutes apart.

Appellant left the scene immediately, disposed of the gun in the Mississippi River, and went to Fort Lauderdale, Florida, arriving there by bus March 7, 1963. He registered at a hotel there as Al Anderson. He was arrested in Miami Beach, Florida, March 9, 1963, and made an oral statement which included admissions that he had shot both Dennis E. Sass and Esther Mills.

Both of the victims died from gunshot wounds in the head. Mrs. Mills received two gunshot wounds, one in the head; Sass received six shots, two in the head.

Upon trial, appellant contended that he shot Sass in self-defense and that Mrs. Mills was shot accidentally.

Assignments 1, 5, 6, and 7 of the motion for new trial will be considered together because they all charge error in permitting mention and evidence of the death of Esther Mills. By Assignment 1 appellant contends that mention of the death of Mrs. Mills in the opening statement of the prosecuting attorney was prejudicial to defendant because it related to another crime. In Assignment 5 the same error is charged against the admission into evidence of Exhibit 4, a photograph of Mrs. Mills in a prone position upon the ground. This assignment also charges that the photograph could serve only to inflame the minds of the jury. Assignment 6 makes the same charges against Exhibit 22, a missile taken from the body of Mrs. Mills; and Assignment 7 is similarly directed against the testimony of the pathologist concerning the death of Mrs. Mills and the removal of the bullet.

■ The general rule excluding evidence that the accused committed other crimes does not apply where such evidence tends to prove guilt of the crime charged, or where the crime charged and the other offenses are so closely related or connected that one cannot be shown without proving the other; and evidence otherwise competent on the issue of accused's guilt of the crime charged is not inadmissible because it also shows him guilty of another crime. See 22A C.J.S. Criminal Law, § 683, p. 741, et seq.

■ By appellant's admission the two killings occurred at the same place, in front of Mrs. Mills's home, only three to five minutes apart, and the bodies were found close together. Under these circumstances, the two offenses were so closely related as to constitute a single occurrence in which proof of one offense also shows the other. Both killings came after a series of events in appellant's romance with Mrs. Mills, which events included threats by appellant against the life of Sass if he did not stay away from Mrs. Mills. Such circumstances permit evidence of the offense against Mrs. Mills. It tends to show the motive and intent of the appellant in killing Sass because Sass himself became involved with Mrs. Mills to the exclusion of appellant. Being thus all a part of one transaction, it was not error to permit the reference to Mrs. Mills's death in the opening statement and to receive the photograph of her body and the details of her death in evidence. State v. Varner, Mo., 329 S.W. 2d 623, 628[7–9]; State v. Gillespie, Mo., 336 S.W.2d 677, 682[10].

■ Assignments 2, 3, and 4 relate to the receipt of Exhibits 1, 2 and 3 showing Sass's body. The charge is that they serve no purpose but to inflame the minds of the jury. Appellant contended throughout the trial that he killed Sass in self-defense. He testified that he was attacked by Sass and that he shot Sass during the attack. Appellant's statement to the police was that he shot Sass while Sass was in the car, and officers who were at the scene shortly after the shooting found Sass's body seated behind the steering wheel of the Buick. The exhibits were material evidence on the issue of self-defense and as to whether Sass was shot while in or out of the Buick. They were also corroborative of the testimony of the investigating officers and of the statement attributed to the appellant. They thus constituted properly admitted material evidence, and their possible prejudicial nature was an unavoidable incident which did not render them inadmissible. The same is true of the picture of Mrs. Mills and the bullet taken from her head. State v. Perkins, Mo., 382 S.W.2d 701, 704[6, 7]; State v. Luttrell, Mo., 366 S.W.2d 453, 461 [7].

■ In Assignments 8 and 9 appellant complains that certain testimony, elicited from Officer Kenneth Edwards and Detective Richard Koenig, violated the rule against hearsay evidence. These witnesses testified that Koenig spoke with Judith and Roxanne Mills, daughters of Mrs. Mills, in the Glasgow Village home about 1:20 A.M. after the shootings at about 1:00 A.M.

Sometime later they went to appellant's place of business, the Cloverleaf Lounge. The testimony in question occurred as follows:

"Q (By Mr. McSweeney) Did you have occasion to talk to any of the occupants of 200 Presley Road while you were up there? A (Officer Edwards) No, sir, I did not talk to anybody.

"Q Do you know whether or not Detective Koenig talked to them? A Yes, sir; I believe he did.

"Q Do you know who they were? A I believe he talked to a Judith Mills.

"Q All right. Where did you go when you left 200 Presley Road? A We went down to the Cloverleaf Lounge at 4949 Natural Bridge Road.

"Q Did you find anyone there at that time? A No, sir, we did not.

\*   \*   \*   \*   \*   \*

"Q All right. Did you have occasion to go into 200 Presley Road or Drive, whatever it is? A (Detective Koenig) Yes, sir.

"Q Did you have occasion to talk to anybody in there? A Yes, we talked to two young girls, Judith Mills and Roxanne.

\*   \*   \*   \*   \*   \*

"Q How long were you up there, Detective Koenig? A At the scene itself? Q Yes. A Approximately an hour, hour and a half, I believe, sir.

"Q Where did you go from there? A We went to an address of 4949 Natural Bridge."

The objections and motions relating to this testimony were coupled with reliance on State v. Chernick, Mo., 278 S.W.2d 741, and State v. Chernick, Mo., 280 S.W.2d 56. In those cases the defendant was the driver of the car used in a bank robbery. One of his coconspirators was arrested at the scene and the circuit attorney testified that he talked to the coconspirator and that after the conversation he put out an arrest order for the defendant. The court

held that the testimony permitted a prejudicial inference that was based on hearsay which would have itself been inadmissible. The obvious reason for not applying the rule of State v. Chernick, supra, to this case lies in the equally obvious distinction between the cases. Chernick was harmed and prejudiced by the hearsay inference because his defense was that he had nothing to do with the crime charged and the testimony identified him, placed him at the scene, and connected him with the crime. In contrast, Aubuchon admitted that he was present at the scene of the shootings and that he shot both Sass and Mrs. Mills. He defended on self-defense and accident, neither of which defenses was affected by the complained-of testimony. Under such circumstances we find no reversible error.

■ Assignment 10 is that the court erred by commenting on the evidence during receipt of testimony from witness Mary Ellen Dillon. On direct examination the witness testified to several conversations she had with appellant relating to Sass and Mrs. Mills, one of which occurred at appellant's tavern in the presence of Penny Stephens, niece of the witness. We set out the testimony and events during which the alleged comment occurred:

"Q (By Mr. McSweeney): Did you have occasion to go to the Cloverleaf at any time with Miss Stephens? A Yes.

"Q Did you see defendant there on that occasion? A Yes.

"Q Did he make any statement with respect to Mr. Sass at that time? A Well, I can't think of it now.

"MR. McSWEENEY: Your Honor, I will ask permission at this time to ask a— THE COURT: Did you hear what her answer was?

"MR. McSWEENEY: She said, 'I can't think of it now.' I will ask permission to ask a preliminary question or two by way of refreshing the witness's recollection, if I may.

"MR. SHAW: Now, if the Court please, I am going to object to this as it is improper examination of a witness. He's asked a question; she said 'no', 'I can't think of it.' Now he has—

"THE COURT: She didn't say 'no', if you are repeating. That is why I asked if you heard what the witness said. She is hardly audible. She said 'I can't think of it now.'

"MR. SHAW: I object to his trying to tell her what the answer is. That is what he is asking your permission to do. THE COURT: Well, that wasn't the former question. The former question, as the Court recalls it, is whether there was anything said in regard to—

"MR. SHAW: Mr. Sass by the defendant and she said she couldn't recall it now. THE COURT: Couldn't recall it now, which implies to me something must have been said.

"MR. SHAW: I am going to ask that the jury be discharged and a mistrial declared because of that remark of your Honor. THE COURT: * * * Objection is overruled."

We have set forth the context of the court's statement to demonstrate its lack of prejudice. The statement does no more than suggest the possibility of other and further testimony from the witness and it in no way indicates what further was or may have been said by appellant to the witness, nor does it suggest that such remark would have been prejudicial or incriminating. Viewed within the context of the testimony and colloquy between the court and appellant's counsel, we conclude that the remark is innocuous and not a subject of reversible error.

In Assignment 11 appellant contends that inspection by the jury of a 38-caliber revolver carried by Captain Fred J. Vasel prejudiced his right to a fair trial by giving his trial a circus atmosphere. Appellant used a Smith & Wesson 38-caliber Chief Special to kill Sass and Mrs. Mills and he disposed of it in the Mississippi River. Six bullet wounds were found in Sass's body and two were found in Mrs. Mills's body. Appellant contended that he had been knocked to the ground by Sass and that he shot him in self-defense. He contended also that Mrs. Mills was shot accidentally when she reached for the gun. Captain Fred J. Vasel of the St. Louis County Police Department testified in rebuttal that his own weapon was a 38-caliber Smith & Wesson Chief Special. He stated also that it had been modified to lessen the trigger pull, which Captain Vasel demonstrated. The weapon had a 5-shot cylinder, as did the weapon used by appellant.

■ Demonstrative evidence is admissible if it explains the intent of the accused or gives the jury a more accurate impression of the facts, or throws any relevant light upon any material matter. State v. Siekermann, Mo., 367 S.W.2d 643, 650[14]. Captain Vasel's revolver, like appellant's, could shoot but five times without being reloaded, and it tended to explain appellant's intent by showing the necessity of reloading after shooting Sass five times in order to shoot him the sixth time. The demonstration was also relevant in that it tended to rebut appellant's claim that Mrs. Mills came to her death by accident. The jury could determine for itself the likelihood of the gun's firing by accident, and the modification which made the trigger pull less than usual could not have harmed appellant. For approval of a virtually identical demonstration, see State v. Richardson, Mo., 321 S.W. 2d 423, 427[2–4].

■ Assignment 12 is that the court erred in refusing to give an instruction cautioning the jury to distinguish between the two killings and that defendant was to be tried only for the killing of Sass. No such instruction was prepared and presented to the court by appellant. Consequently, there was no proper request for such cautionary instruction, State v. Harris, Mo., 356 S.W.2d 889, 891[3–5]; and, absent request,

there is no error in refusing to give such an instruction, State v. McMillian, Mo., 338 S.W.2d 838, 843[5].

In Assignment 13 appellant complains of the use of "and not under the influence of a violent passion suddenly aroused by some lawful or just cause or provocation" in defining "deliberately" in Instruction No. 1 on murder in the first degree. Virtually identical language was approved in defining "deliberately" in State v. Duestrow, Mo., 137 Mo. 44, 38 S.W. 554, 561, 566[9]. See also Ex parte Johnson, Mo.App., 142 S.W.2d 651, 653[1]. Since appellant was convicted of murder in the second degree, he has no complaint against the instruction on first degree murder. State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 26[1].

Assignment 14 charges that Instruction No. 2 was "an improper instruction concerning the law as to murder in the second degree." This assignment is not sufficient to preserve any matter for appellate review. State v. Miles, Mo., 364 S.W.2d 532, 537[11].

In Assignment 15 appellant charges that the definition of "provocation" in Instruction No. 3 on manslaughter was erroneous because it dealt only with legal conclusions and did not incorporate facts relative to the alleged attack on appellant by Sass. In State v. Brooks, Mo., 360 S.W.2d 622, 628[13], we held that an objection that a manslaughter instruction failed to define provocation was not well taken. Moreover, the definition of provocation in this case is virtually the same as that quoted with approval in State v. Davis, Mo., 328 S.W.2d 706, 708[3].

Assignment 16 complains of error in Instruction No. 5 charging that it "negatived the Defendant's self-defense instruction and unduly impressed upon the Jury those acts which would not amount to self-defense." Instruction No. 5 told the jury that the law of self-defense would not permit attack or acts done in retaliation or for revenge and then proceeded with an hypothesis which limited defendant's right of self-defense if the jury found that defendant sought, brought on, or voluntarily entered into a difficulty with the deceased for purpose of retaliation, revenge, or punishment. The instruction is proper and within the general rule that one who is an aggressor or provokes a difficulty in which he injures or kills his assailant cannot invoke the right of self-defense to excuse or justify entirely the injury or homicide. State v. Spencer, Mo., 307 S.W.2d 440, 443 [2, 3]; State v. Gieseke, 209 Mo. 331, 108 S.W. 525, 528, 529. There was evidence to show that appellant went looking for the deceased, prepared with a loaded gun to kill or do great bodily harm. The assignment is without merit.

Assignment 17 is that Instruction No. 6 "tended to be a circumstantial evidence instruction, but * * * did not advise the Jury as to all of the law which the Court attempted to instruct the Jury in Court's Instruction No. 6." Rule 27.20, V.A.M.R. requires that in order for an assignment to preserve anything for appellate review it must set forth the grounds "in detail and with particularity." Vague and general assertions, as that set out above, preserve nothing for review. State v. Butler, Mo., 353 S.W.2d 698, 700[4–6].

Assignment 18 concerns Instruction No. 7 which read: " * * * that, if you find and believe from the evidence beyond a reasonable doubt that the defendant made any threat against the life of Dennis E. Sass, then such threat should be considered by the jury in determining whether the defendant was the aggressor and for the purpose of showing what the intentions of the defendant were at the time of the said shooting, wounding and killing, * * *." Appellant's complaint is that " * * * There was no evidence * * * that the Defendant ever threatened the life of the deceased Dennis E. Sass * * *." The assignment is without merit because there

was evidence upon which to submit the instruction. James Hemby testified that he lived at 204 Presley Road and that at 12:30 A.M. one morning about a month before the shooting he saw an altercation in front of 200 Presley Road where Mrs. Mills lived. At the conclusion, he observed a man walk to a white station wagon similar to the one used by appellant on the occasion of the shootings. As the man walked toward the station wagon Hemby heard him say to the other man in the altercation, "I'll kill you." He testified also that the man returned later. Charles Adams of the St. Louis County Police Department testified that on February 8, 1963, he investigated a call to 200 Presley Road. He was there about 1:15 A.M. and found Mrs. Mills and Sass present. The front door glass had been broken and the door and door frame were bent. Appellant arrived during the 50-minute investigation and said that he broke the door earlier. He also requested the officer to put Sass out of the house. Mary Ellen Dillon stated that she was at Mrs. Mills' home in early February and had occasion to answer the telephone when the caller was appellant. She testified that appellant said, in reference to Sass, "That he was going to get him * * * that Dennie had taken one girl from him and that * * * he wasn't going to get away with it." The witness testified also to an occasion on a Friday night in January 1963, at appellant's Cloverleaf Lounge, when appellant said "that he was going to get Mr. Sass because of Esther, because of the fact that he had taken another girl away from him."

In Assignment 19 appellant complains of Instruction No. 9 which told the jury that an oral statement made by defendant was admissible if they found it was given voluntarily. Appellant contends that giving the instruction was error because he made no issue of the voluntary nature of his statement and that it told the jury that all they had to find was whether the statement was voluntarily given and, if so, the statement was necessarily true. A fair reading of the instruction belies the charge that the

statement was to be taken as true if found to have been given voluntarily. The jury was, in the same instruction, told that the statement was "to be given such probative value as evidence as you believe it deserves." The instruction thus told the jury to ignore the statement as any proof of guilt if it was not voluntary. An instruction in virtually the same language was approved in State v. Cunningkin, Mo., 261 S.W.2d 85, 86. In that case it was also contended that the instruction should not have been given because there was no dispute as to voluntariness of the statement. The contention was denied. 261 S.W.2d l. c. 87[5].

Assignment 20 charges that Instruction No. 10 was an improper statement of the law of flight because it used "fled from the scene thereof" instead of "fled from his usual place of abode." The instruction told the jury that if it found and believed beyond a reasonable doubt that defendant, after commission of the offense, fled from the scene thereof and from St. Louis County and the State of Missouri, such flight could be taken into consideration in determining guilt or innocence. Appellant testified that he had been born and raised in Florissant, St. Louis County, and that he had lived there all his life. The evidence showed that as he left the scene of the crime he went immediately on a journey by bus that put him in Fort Lauderdale, Florida, March 7, 1963. The term "flight" denotes the act of leaving the scene or vicinity of the crime, and the act of flight may be shown on the issue of guilt. State v. Williams, Mo., 382 S.W.2d 597, 600[5, 6]. Under the circumstances of this case the instruction was proper.

Assignment 21 complains of the refusal of defendant's Instruction A, which would have told the jury it should view the oral statement made by defendant with caution because such an oral statement was subject to imperfection or mistake on the part of the witness who testified about the statement. State v. Clark, Mo., 277 S.W.2d 593, 601[10], approved the refusal of an in-

struction that verbal statements of the defendant are to be received with great caution on account of the liability of witnesses to forget or misunderstand what was really said or intended; and an instruction that evidence, by way of oral statement, should be received with great caution was held properly refused in State v. Bozarth, Mo., 361 S.W.2d 819, 828[16, 17]. The court gave an instruction on credibility of witnesses which is not challenged by appellant, and there is no error in the refusal of Instruction A.

■■■■■ Appellant's final assignment, No. 22, complains of the refusal of his Instruction B which undertook to explain the circumstances under which an accused could be convicted on circumstantial evidence. Appellant made an oral statement in which he admitted the shootings and he so testified at the trial. Such constituted direct evidence of guilt, rendering an instruction on circumstantial evidence unnecessary because such instruction is required only in cases based solely on circumstantial evidence. State v. Smith, Mo., 377 S.W.2d 241, 244 [3–5].

We have also examined record matters for which no assignment of error is required. Rule 28.02, V.A.M.R. The indictment is in proper form and sufficient; defendant was arraigned and he pleaded not guilty; the verdict is in proper form and is responsive to the issues and the punishment is within legal limits; defendant's motion for new trial was considered and allocution was granted.

Defendant had the benefit of counsel throughout his trial, in preparation of his motion for new trial, and upon allocution.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.